CASE 39—ACTION FOR DAMAGES IN BUILDING WALL TO ANOTHER WALL.

# Welford v. Gerard.

APPEAL FROM WARREN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF FOR DAMAGES AND DEFENDANT APPEALS. AFFIRMED.

PARTY WALLS—ATTACHING BUILDING TO ANOTHER WALL—DAMAGES— ESTOPPEL.

Held: 1. Where plaintiff permitted defendant to attach his building to plaintiff's wall with the understanding that if defendant was not entitled to the use of the wall he would be required to pay the plaintiff damages, the plaintiff is estopped to demand the removal of defendant's building.

2. In such case, however, plaintiff is entitled on equitable principles, to recover one-half the value of the wall, from the defendant.

3. Appellant having had the use of appellee's property; when he asks equity and thus secures the right to maintain his building, he must, himself do equity. The same principles of equity which prevent appellee from removing appellant's building, apply to and estop him from denying that he must compensate appellant for his property which he has taken.

MITCHELL AND DUBOSE ATTORNEYS FOR APPELLANT.

1. We contend that where a person obtains a benefit from the property of his neighbor, without injury to him or the property, or in any way lessening its value or its use to him, it is an *"injury without damages"* for which no action, legal or equitable, can be maintained.

2. The defendant erected his building adjoining plaintiff's wall with the knowledge and consent of the plaintiff and therefore is not guilty of trespass.

3. The court erred in fixing the amount of the recovery, under the finding of the jury. Civil Code, sec. 606, sub-sec. 2; Civil Code, sec. 12; Carder v. Weisenborough, 95 Ky., 138; Campbell v. Merier, 8 Am. Dec., 570; Sanders v. Martin, 31 Am. Rep., 598; See also, Am. Dec., 698; Meek v. McCall, 80 Ky., 371.; Hill v. Phillips, 87 Ky., 169.

LEWIS McQUOWN ATTORNEY FOR APPELLEE.

1. The amount of the value of the wall taken from appellee and the damages to the remaining half were properly submitted to a jury, and their finding is clearly within the limits fixed by the evidence.

2. The jury found that the appellee was the owner and in the possession of the wall in 1892-3, the time appellant took possession thereof.

3. The defense rests upon technicalities. There is no question that appellant has used a wall 100 feet long and forty-six feet high which appellee built on his own land more than twenty years ago. Appellant has never paid for any part of·this wall. He seeks something for nothing.

JOHN B. RODES, ATTORNEY FOR APPELLEE.

1. The attempted plea of appellant that the wall in controversy is a party wall is so indefinite as to be wholly insufficient.

2. His plea of right by prescription is not sustained by the evidence. The manner and extent of his use establish the confines and corner stones, beyond which if you encroach, you become a trespasser. Wash. on Real Prop., (5th Ed.), vol. 3, page 337; Wash. on Easements, 3d Ed., page 117 and 155-6.

3. The chancellor has a discretion to submit issues of fact to a jury, and the record shows that this discretion was not abused in this instance.

4. The damages, found by the jury and allowed by the court, are· not excessive and are fully sustained by the evidence. Civil Code, sec. 750; Williams v. Rogers, 14 Bush, 786; Richardson v. Tobey, 121 Mass., 457, (or 23 Am. Reports, 283;) Sanders v. Martin, 2 Lea, 213, (or 31 Am. Rep., 598;) L. & B. S. R. R. Co. v. Combs, 10 Bush, 382; J. M. & I. R. R. Co. v. Esterle, 13 Bush, 667; Sedgwick on Damages, 8 Ed., vol. 1, secs. 94 and 95; Sedgwick on Damages, 8 Ed., vol. 3, sec. 924, page 36; Sutherland on Damages, vol. 3, 2d Ed., sec. 1025; Ritter v. Seiger, 105 Penn. Rep., page 400.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

Appellee brought this action in equity against appellant, alleging that he owned a house and lot on the public square in the city of Bowling Green; that, unlawfully and without right, appellant had, by force and arms, taken

possession of the southeast wall of his house,—cutting into same, and using it as a wall of a three-story building, erected of stone, on the adjoining lot. He prayed that appellant be compelled to detach his stone building from the wall, or that, if he was not entitled to this relief, damages be awarded him for the injury to his wall. Appellant by his answer admitted the cutting of the wall, and the use of it as a wall of his building, but denied that the wall was the property of appellee. After a large number of depositions had been taken, appellee moved for an issue out of chancery before a jury, which was ordered. The jury in response to questions propounded by the court, found, in substance, that the wall in contest is entirely upon the lot of appellee; that no part of it lies on the lot of appellant; that appellee had had actual, adverse possession of the wall for more than fifteen years before the filing of the suit; that appellant and his vendors had not had such possession; that it was appellee's wall; that appellant took possession of half of it; that his occupancy of it was permanent; that a fair compensation to appellee for such use of the wall was one-half of its value, or $522.-50; that appellant had damaged the wall $100; and that he had taken possession of it unlawfully, willfully, and against the consent of appellee. The proof showed that, when appellant took possession of the wall and used it in his building, appellee objected, and there was some talk between them about arbitrating the matter, both of them claiming to own the wall  They both went to see the same attorney. He advised appellee not to sue out an injunction; that appellant was solvent and responsible; and that appellee should not delay him in his building, but sue him for whatever damages might result from the use of

the wall. Appellee agreed to follow this course, and appellant was notified that he had consented to abide the attorney's advice. Appellant then went on with his building, and appellee made no further remonstrance, but, after the building was finished, filed this suit. Under this evidence and the finding of the jury, the chancellor refused to order appellant's building detached from the wall, but entered a judgment against him in favor of appellee for $572.50; being the value of one-half the wall as fixed by the jury, and one-half the damage to it by the cuttings made by appellant in the erection of his building. From this judgment appellant has prosecuted this appeal.

The property of appellee has for years been known as the "Keel Lot." The property of appellant adjoining it has for years been known as the "Herdman Lot." At the earliest recollection of the witnesses who testified, there was a house on both lots, with a common wall between them. The Keel house burned during the war, and some years after the war appellee purchased the lot, and erected on it a three-story brick house. The old house was two-stories high, and ran back only forty feet from the street. When appellee began to build, he found the old wall badly cracked and bent. This wall then served as the end wall of the Herdman house. It was in such bad condition that appellee was unwilling to build upon it, and tore it down. He then rebuilt this wall, and extended it back sixty feet; making his new structure 100 feet deep, and leaving the timbers of the Herdman house supported by it as before. Thus matters stood for something over twenty years, when appellant tore down the Herdman house, and erected on that lot the three story stone structure above referred to; using the whole wall built by appellee as a part of his building. There are a number of

circumstances shown by the evidence sustaining the find-
ing of the jury that this wall is entirely on appellee's lot
and is his property. The Keel house had a cellar under
it, with a rock wall around it. This rock wall is built with
its smooth side next to the Keel property, and rough and
unfinished on the Herdman side. The wall next to Herd-
man is substantially the same as the wall on the oppo-
site side of the cellar. The brick walls of the old Keel
house stood on this stone foundation, and, as the wall on
the opposite side admittedly belonged to Keel, the whole
of this stone foundation around his cellar, which was all,
apparently, one structure, should be presumed to be his.
There is testimony in the case showing that the structure
of the Herdman house was such as to indicate that it was
built after the Keel house. The joist of the Herdman
house did not rest upon the wall between the two houses,
but ran parallel with this wall, and rested on girders.
There is some testimony in the case that these girders
in the original house were not imbedded in the old wall,
but merely came against it, and appellant's own testi-
mony rather sustains this conclusion. The proof, at least,
is clear that these girders rested on posts, and that the
weight of the old Herdman house was borne by itself.
Four feet from the wall in contest, in the old Herd-
man house, there was a brick wall, which went up to the
second story, and supported the girder under that floor,
but this wall did not extend beyond that floor. The Herd-
man house rested in precisely the same way upon the house
on the opposite side of it, apparently having been put in
between these two houses after they were built. There
is no claim that the wall on the other side was a party
wall, and, the use of both walls being the same, it would
seem probable that the owner of the Herdman house had

no more right in one than the other. In a deed made in 1816, the lot on which the Herdman house stands is referred to as adjoining "the ground now owned and occupied by John and James Keel;" thus showing that the Keel house was then built, when it would appear that the Herdman prop- erty was referred to as a lot reserved to Soloman P. Sharp in the deed. There were fireplaces in the old wall on the Keel side, and none on the Herdman side. There is proof, also showing that there were other buildings on the Keel lot, built on the line of this wall, and that the wall in the time of the Keels was recognized as their property. Herd- man purchased in 1880, after appellee's house was built, from Jenkins, one-half of the opposite wall, on which, as above explained, the timbers of his house rested just as they did on appellant's wall. Under all the testimony, the verdict of the jury in favor of appellee seems to us correct.

It being established that the wall belonged to appellee, and stood entirely on his ground, it is insisted for appel- lant that no judgment could be rendered against him for the use of the wall. In support of this contention, we are referred to a number of authorities holding that there is no obligation at common law on the part of the other owner to contribute towards the expense of the construc- tion of a wall, when he subsequently uses it as a support of a building erected by him, in the absence of a contract between the parties to pay for such use. Bisquay v. Jeune- lot, 44 Am. Dec., 483; Abrahams v. Krautler, 66 Am. Dec., 698; Wood, Nuis., section 221. In a number of States, statutes have been passed changing the common law rule on this subject. Id., section 225. But it is insisted that, as we have no such statute in Kentucky, the recovery in this case can not be sustained. But the common law, where the owner of a wall has, without his consent, been

trespassed upon by an adjoining proprietor building upon
it, did not leave him without remedy; and, while it was
held that he could not sue in assumpsit, he was allowed
to sue in trespass, and recover compensation in damages
for the injury. See cases above cited. In this case, as
appellant had, without right, taken possession of appel-
lee's wall, and built his house upon it, if there had been
nothing more in the case the chancellor would have been
authorized to require him to restore what he had taken
away, and detach his house from the wall. This would
have been a much more onerous judgment against appel-
lant than that complained of; and as it appeared from the
proof that the house was built after both parties had con-
sulted the same attorney, and upon a tacit understanding,
at least, that, if appellant was not entitled to the use of
the wall, he would be held liable in damages, the chan-
cellor properly refused to require the house to be de-
tached; for appellee, after standing by and allowing ap-
pellant to build his house under the impression that the
matter was to be adjusted in damages if he was not en-
titled to the use of the wall, was clearly not entitled to
have the house torn away, which he had thus consented
should be built. But it does not follow that, because he
is not entitled to a removal of the building from the wall,
the chancellor should have left him without remedy. Ap-
pellant has had the use of appellee's property. When he
asks equity, and thus secures the right to maintain his
building, he must himself do equity. The same principles
of equity which prevent appellee's demanding the removal
of the building, estop appellant from denying that he
must compensate appellee for his property which he has
taken. The chancellor, sitting as a court of conscience,
in such a case, compels both parties to do what in good

Welford v. Gerard.

conscience they ought to do. ; Appellant, having appropriated the property of appellee, ought in good conscience, to make him whole, and, while demanding the right to maintain his building, can not, in equity, be allowed to do less. While we have not found any authorities directly in point, it seems to us that the case is controlled by well-settled equitable principles. In Campbell v. Mesier, 8 Am. Dec., 570, Chancellor Kent sustained a recovery where the equity of the plaintiff was no stronger than here. This case, though afterwards questioned, was subsequently affirmed. See note, page 575. The same rule was followed in Sanders v. Martin by the supreme court of Tennessee, 31 Am. Rep., 598. The argument for appellant is based on common law decisions; counsel overlooking the fact that this suit was in equity, and that the jurisdiction of the chancellor in such cases is much broader than that of the common law courts, as is well shown in the cases above cited. It is true, Herdman had acquired an easement in the old Keel wall by prescription; but this easement existed only in behalf of the old house, two-stories high and forty feet deep. It conferred on appellant no right to build a stone house three-stories high, and 100 feet deep, resting on the same wall, or to cut new holes in it, or to build the wall higher or put flues in it. This was a new use, much more burdensome than the old and wholly unwarranted by the easement enjoyed by Herdman. On the whole case, it seems to us that the judgment of the chancellor does substantial justice between the parties, and should not be disturbed. Judgment affirmed.

Judge Paynter dissents.