MARGARET FLEMING, trustee, *vs.* MARKS I. COHEN.

Suffolk.    December 10, 1903. — July 5, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND,
LORING, & BRALEY, JJ.

*Equity Pleading and Practice,* Master's report.    *Easement.    Party Wall.*

Where the order appointing a master does not require him to report the evidence,
and a motion for an order requiring him to do so is denied, if he reports all the
facts on which he bases his findings for the purpose of presenting the questions
raised and argued before him, it is open to this court to consider whether on his
report a finding of the master which includes rulings of law can be sustained.

Owners of adjoining buildings may acquire by prescription mutual easements of
support and shelter.

Where a wall dividing two city lots and standing four inches on each has existed
for sixty years and a part of it has been treated as a party wall by the owners
of both lots, it will be presumed in the absence of evidence to the contrary to
have become a party wall throughout its length and the owner of either lot may
strengthen and repair the foundation of the wall and build the wall higher than
the adjoining house.

A party wall standing one half on each of two adjoining city lots does not lose its
character by the fact that it has declined from a vertical line and leans over one
of the lots from three to five inches, and the rights of the owners remain the
same as if it was straight.

BILL IN EQUITY, filed December 17, 1901, to restrain the defendant from building or completing any wall or other structure over or upon the land of the plaintiff, for an order to remove such structures already built, and for damages.

The case was referred to a master who filed a report. The Superior Court made a decree denying a motion of the defendant to amend the order of reference to the master by ordering him to report such portions of the evidence as either party might request, and ordered that the exceptions to the master's report be overruled and the master's report be confirmed. The Superior Court made a decree giving relief to the plaintiff in accordance with the prayers of her bill; and the defendant appealed.

A reduced copy of the plan mentioned in the third paragraph of the opinion is printed on the following page.

The case was argued at the bar in December, 1903, before *Knowlton,* C. J., *Morton, Lathrop, Barker,* & *Braley,* JJ., and afterwards was submitted on briefs to all the justices.

*J. E. Macy,* for the defendant.

*F. C. Allen,* for the plaintiff.

Braley, J. The parties own adjoining estates, and the defendant has constructed a brick building, a small part of which is on the land of the plaintiff, unless the wall that forms the southwesterly side of the plaintiff's house, and a part of the northeasterly side of that of the defendant, can be considered a party wall which he could properly use in the erection of his building, and this raises the principal question argued by the defendant on his exceptions to the master's report.

The length of the entire wall is thirty-four and seventy-five one-hundredths feet, of which thirteen feet running westerly

CROSS STREET.

from a passageway forms the exterior wall of an ell of a house of the defendant, which was on his land before he began to build.

In the report no details are given of the dimensions or method of construction of the new building, and whether it was an enlargement of his old house or a separate building is not stated, but by the plan the whole area of his lot on this side appears to have been used for this purpose at the date of filing the bill.

When in 1845 John Fleming, under whose will the plaintiff claims title individually and as trustee, built the house on his lot which is still standing, he used this wall of the ell to its full height of two stories as a part of the southwesterly wall of his house, and added a third story; so that when the house was fin-

ished, the wall for its entire length formed the southwesterly side of it as well as the northeasterly side of the ell.

At that time the land now owned by the defendant was held by Ebenezer Eaton, a predecessor in title, and it may be inferred that because Fleming used the wall of the ell as a part of the construction of his house, and to which he either had no title, or his title was not admitted, that a controversy arose between them, and to settle the dispute, Eaton, April 17, 1845, released and conveyed to Fleming " a certain small strip of land four inches wide and about thirty-five feet long . . . adjoining the southerly line of said Fleming's land, and running from a back passageway that leads westerly from Cross Street under the brick wall lately erected by said Fleming, so as to embrace one-half part, to wit: the southerly [found by the master to be meant for northeasterly] half of said wall ", followed by a description by metes and bounds.

Since then, for a period of more than fifty-five years, this portion of the wall has been used by the owners of the adjacent lands for the support of their respective houses.

It is the contention of the defendant that this release was an agreement in form sufficient to make the structure a party wall, but it only purports to define the line of division and contains no language that is susceptible of such a construction, and the master finds " that said release is not in any sense a party wall agreement ", and this finding and ruling was right. But he further states " that it has not been made a party wall . . . by implication or by prescription ", and it remains to be determined whether, under the facts reported, it became a party wall by implication of law.

The decree appointing a master did not require him to report the evidence, and a request for such an order was afterwards denied, but all the facts on which he bases these findings are apparently reported for the purpose of presenting the principal question raised, and argued before him, and it is open for us to determine on the report whether the last finding which includes rulings of law can be sustained. *Parker* v. *Nickerson*, 137 Mass. 487. *Goodell* v. *Goodell*, 173 Mass. 140, 146, 148.

If before this deed was given there were conflicting claims as to the boundary line, and either of the parties could have con-

tended that the other had built on his land, or Eaton alone may have been a trespasser; yet under it there can be but one construction as to its effect in determining the boundary of each estate; for a deed poll being given by one, and accepted by the other, was as effectual as if a formal indenture had been signed; and thereafter they occupied and enjoyed their estates within the line established by the deed, and the completed wall as it then stood and in use was divided longitudinally, one half being on the land of each of them. *Newell* v. *Hill*, 2 Met. 180. *Carroll* v. *St. John's Catholic Total Abstinence & Mutual Relief Society*, 125 Mass. 565, 566. *Boston* v. *Richardson*, 13 Allen, 146, 154.

But if each was seised of a moiety of the wall, and nothing more, and no right of support or shelter had been acquired, either could have taken down his house when he pleased without regard to the injury that he might thereby cause his neighbor's property. *Adams* v. *Marshall*, 138 Mass. 228. *McKenna* v. *Eaton*, 182 Mass. 346, 347. Compare *Everett* v. *Edwards*, 149 Mass. 588, 593, *ad finem*.

An extended discussion is not required to show that it is not reasonable to suppose that the parties contemplated such a result, or that either can be found to have intended that the other could at his pleasure practically destroy the wall by removing his half; for there were buildings on both lots at the time, and the wall had become a part of their construction; and if either had owned both estates, and subsequently sold one, or both to different owners under a similar description, there would seem to be no doubt that this portion would be deemed a party wall. *Carlton* v. *Blake*, 152 Mass. 176. *Everett* v. *Edwards*, *ubi supra*.

But where estates are so situated, there is no legal distinction between a mutual grant of separate owners or a grant by one who owns both, as the law implies the reservation of an easement in the half of the wall granted and a grant of a corresponding easement in the half retained, and this part at least of the wall could not thereafter be held to be simply a measure of division, or a boundary between the houses, because it had become physically a part of each, and this determined its character. *Carlton* v. *Blake*, *ubi supra*. *Knight* v. *Pursell*, 11 Ch. D. 412. See also *Rogers* v. *Sinsheimer*, 50 N. Y. 646.

If no change took.place in the ownership of the land by reason of the fact that any portion of it was covered by the wall, so that the several titles to the property remained the same, yet the title of each owner of necessity became subject to the ease- ment of the other to support his building by means of the com- mon structure even though for this purpose not much more than a third was used.

After the prescriptive period has ripened, a division wall be- tween buildings may take on the character of a party wall and be treated as such though the right thus acquired is limited to the exact use of it by the adjoining owner who claims the easement. *Phillips* v. *Bordman*, 4 Allen, 147. *McLaughlin* v. *Cecconi*, 141 Mass. 252. *Schile* v. *Brokhahus*, 80 N. Y. 614, 618. *McVey* v. *Durkin*, 136 Penn. St. 418.

But the master instead of giving to the defendant the full benefit of this right, which would have been sufficient to support his claim of prescription, limited it to only so much of the wall that supported the floor timbers of the ell, notwithstanding the fact that after the deed the line of division was the centre of the wall, which had incorporated the entire end of the ell.

It would be, however, a forced construction to say that the intention of the owners was to limit their rights to the thirteen feet alone which was in use as a party wall, and while the deed contains no express words reciting the reasons, or specifically stating the purpose for which it was given, the intention of the parties must be gathered from all the facts found and stated in the report. As the wall stood at the time it was a completed structure, and it may well be considered as probable that Eaton would not have consented to the appropriation of any part of his estate, unless he acquired an equivalent right to use the whole wall if he should find it convenient or profitable, or that the twenty-two feet which was in use by only one should be ruined by tearing down the other half, any more than the thirteen feet used by both should be destroyed in the construction of other buildings on his land.

If it is now held that such use by the plaintiff as a part of her building is legally proper, then the defendant, under the finding and ruling made by the master, has only a prescriptive right to use it as a foundation for the wall of the ell, and not only this,

but he is compelled to have a strip of his land subjected to a perpetual easement in her favor. This is a conclusion a court of equity should hesitate to adopt, for by it the defendant would be obliged to submit to an appropriation of his property, for the use of the plaintiff, without any corresponding right; and if she now invokes the aid of equity to determine and protect her rights of property, she must at the same time recognize his legal and just claims in the use and maintenance of a structure, which must be considered in order for her to maintain her suit, as held in common, but subject to an easement for the sole benefit of her estate, rather than with cross-easements for their mutual benefit.

The length of time the wall has existed, the nature of the use to which it has been put, the fact that the estates meet in its centre, the uniform acquiescence of those holding title to the land in existing and permanent conditions, all afford, in the absence of evidence to control it, a presumption without further proof that the whole wall was intended to be used in common rather than considered as a mere mass of bricks and mortar, owned in severalty, with the usual incidents that may attach to such a tenure. *Phillips* v. *Bordman, ubi supra. Everett* v. *Edwards, ubi supra. Campbell* v. *Mesier,* 4 Johns. Ch. 334.

The easement of support afforded by a wall of this nature is not confined to the original building, but extends to and covers a new structure that may be erected and supported by it, and if from use and lapse of time the wall becomes weakened or dilapidated, or is partially destroyed, either proprietor may repair or rebuild it, *Campbell* v. *Mesier, ubi supra, Partridge* v. *Gilbert,* 15 N. Y. 601, *Eno* v. *Del Vecchio,* 4 Duer, 53, or may deepen its foundations and make additions to it on his own land if its essential character is not changed or impaired, to fit it to bear the weight of a higher building; *Quinn* v. *Morse,* 130 Mass. 317; *Matthews* v. *Dixey,* 149 Mass. 595, 596; *Allen* v. *Evans,* 161 Mass. 485; *Walker* v. *Stetson,* 162 Mass. 86; *Standard Bank of British South America* v. *Stokes,* 9 Ch. D. 68; though in certain cases he may have no right to contribution for any part of the expense even though the wall may have been improved and made more valuable for the use of an adjoining owner. *Walker* v. *Stetson, ubi supra.*

The master finds that since the original wall was built, and presumably after the date of the deed, it has inclined from a perpendicular line, and it may be inferred that it leans over the land of the plaintiff from three to five inches, and it appears that the defendant in using it has strengthened and repaired the foundation, built it higher than the plaintiff's house, and carried it to the top of his new building.

No mention is made in the report of any deterioration or want of repair above the foundation that would authorize the defendant to tear down and replace the wall, and where a change is made that is not required for the purpose of making such repairs, the party who makes them is liable to the adjoining owner for any damages which may result to his property; and if he reconstructs the wall when it becomes necessary, then due care must be used to avoid unnecessary injury to the other owner. *Eno* v. *Del Vecchio*, 6 Duer, 17. *Gorham* v. *Gross*, 125 Mass. 232. *Hughes* v. *Percival*, 8 App. Cas. 443, 447.

But if the defendant could not rebuild the wall because it was sound, nor build a new wall in its place to sustain a building requiring a thicker and stronger support, even though he had acquired a right to its use in common with the plaintiff, yet he is not called upon to surrender this easement because an apparently sound and substantial wall during the half century and more of its existence had inclined to a slight extent towards the land of the plaintiff.

The foundation had not moved, and the defendant used the common wall as he found it, and if it had become such, any of the incidental changes from long use such as a slight inclination either way, if its integrity of construction remained unaffected, would not alter the rights of the parties; for in any wall of this kind these changes may be held to be fairly within the contemplation of the parties, and when they take place, do not operate to destroy the full use of the easement.

If the inclination had been towards the defendant's land it would not be seriously claimed that he could maintain a suit against the plaintiff either at law for damages, or in equity for its removal.

After the foundation had been made more stable, it is a fair inference, in the absence of any adverse finding by the master,

that it became of sufficient solidity and strength to support the additional weight of the defendant's building, and that in the lawful improvement of his estate this use of it has not caused any injury to the wall itself or damaged the property of the plaintiff. *Matthews* v. *Dixey, ubi supra.*

In this situation of the parties, the right to carry up the wall to a height greater than that required to support the house of the plaintiff must be held to be fairly included within the common easement. *Phillips* v. *Bordman, Everett* v. *Edwards,* and *Allen* v. *Evans, ubi supra. Brooks* v. *Curtis,* 50 N. Y. 639, 644.

The finding and ruling of the master "that said thirty-five foot wall is not wholly or in any of its parts a party wall; that it has not been made a party wall by virtue of . . . any agreement, express or implied, by implication or by prescription" cannot be sustained. A majority of the court are of opinion that by reason of this error the twelfth, thirteenth, twenty-seventh, twenty-eighth and twenty-ninth exceptions of the defendant to his report must be sustained, and the decree of the Superior Court overruling them and confirming the report reversed.

*Decree reversed.*