CASE 89.—ACTION BY HORATIO S. BRIGHT AGAINST J. BACON & SONS TO ENJOIN THE EXTENSION OF A PARTY WALL.—February 9.

# Bright v. Bacon & Sons, &c.

Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

SHACKELFORD MILLER, Judge.

Injunction denied and plaintiff appeals—Affirmed.

1. Party Walls—Creation—Agreement or Prescription.—Under the common law, the right to use and the manner of use of a party wall depends, either on the agreement between the adjoining owners, or by prescription.

2. Estoppel—Acquiescence.—One may adopt a situation so as to make himself a party to it as efficaciously as if he had entered at the beginning.

3. Party Walls—Creation—Implied Agreement.—Where a party wall exists on the boundary line of adjoining owners for time immemorial, it is presumed that the wall was constructed by agreement; and, in the absence of any express agreement, the rights of the parties will depend on an implied agreement.

4. Same—Extent of Use—Alteration.—And such implied agreement is that the wall shall remain as a support to each building; and, if one of the owners desires to remodel or reconstruct his building he must not injure the others' building.

5. Evidence—Presumptions—Custom of Men.—The law will not presume a thing contrary to the custom of men.

6. Party Walls—Nature of Easement.—An owner on whose boundary line is a party wall has an easement in so much of the adjoining lot as is occupied by the wall, but such easement involves no more than the right to have the wall maintained as a party wall.

7. Same—Extension—Compensation.—Where one owner of a party wall alters his house resting on the party wall by build-

ing on his side of the wall to the top thereof, and then building another story, using the whole thickness of the party wall, the other owner, if he desires to so extend his house and use the party wall as extended, must compensate the other for one-half of its then value.

8. Contracts—Construction—General Rules.—While the law does not make contracts for parties, it attempts to construe them according to the presumed intent.

9. Party Walls—Prescription—Extent of Use.—Where one builds a wall on his own lot, but adjoining or near another lot and the owner of the latter, without express agreement, joins his building to the wall, and maintains it for a period sufficient to constitute a bar under the statute of limitations, the latter has a right, established by prescription, to maintain the exact house he has built, and, in the manner and to the extent of his use, he cannot be interfered with by the former.

10. Same—Implied Agreement—Extent of Use.—One party wall owner, desiring to alter his house, which rested on the wall, built an additional wall on his land, and tied it to the party wall until it reached the top thereof, and then built a new wall the full thickness of the party wall for the remaining story, all of which was done without any injury to the party will, or to the other owners house, which also used the party wall. The rights of the parties depended on an implied agreement, the wall having been used for time immemorial, and there was no question of prescription. Held, that such alteration must have been intended by the parties, and such construction was proper, and could not be enjoined.

HELM BRUCE for appellants.

ALBERT S. BRANDIES of counsel.

POINTS AND AUTHORITIES.

1. Party walls—how created. (Bishop on Non-Contract Law, sec. 915; Whiting v. Gaylord, 66 Conn. 337.)

2. Party walls by prescription. (Welford v. Gerard, 108 Ky. 322; Mann v. Reigler, 33 Ky. Law Rep. 774, 111 S. W. 300; 3 Kent's Com. 437, 13 Ed.; Putzell v. Drovers & Mechanics National Bank, 78 Md. 349, 28 Atl. 276; Barry v. Edlavitch, 84 Md. 95, 35 Atl. 170; McLaughlin v. Cecconi, 141 Mass. 252, 5 N. E. 261; Calmelet v. Sichl, 48 Neb. 505, 67 N. W. 467; Lewis v. New York & Harlem R. R. Co., 162 N. Y. 225, 56 N. E. 540; Bayton v. Langley, 19 Nev. 69; Mississippi Mills v. Smith, 69 Miss. 299, 50 Am. St. Rep. 546.)

3. True nature of party wall rights. (1 Washburn on Real Property, 5th Ed. 385; Tiedeman on Real Property, sec. 620; Brooks v. Curtis, 50 N. Y. 639, 10 Am. Rep. 545; Gibson v. Holden, 115 Ill. 199, 3 N. E. 282; Bloch v. Isham, 28 Ind. 37, 92 Am. Dec. 287; Dauenhauer v. Devine, 51 Texas 480, 32 Am. Rep. 627; Hoffman v. Kuhn, 57 Miss. 750; Benton v. Moffitt, 3 Oregon 29; Barr v. Lamaster, 66 N. W. 1110 (Neb.); Denscomb v. Randolph, 107 Tenn. 89, 64 S. W. 21; Bishop on Non-contract Law, sec. 914; Henry v. Koch, 80 Ky. 371, 44 Am. Rep. 484.)

4. Party walls built under known agreements. (Brooks v. Curtis, 50 N. Y. 642; Everett v. Edwards, 149 Mass. 588; Negus v. Becker, 143 N. Y. 343; Graves v. Smith, 87 Ala. 450; Carlton v. Blake, 152 Mass. 176.)

5. Actual Injury.

6. The remedy. (Clark v. Martin, 49 Pa. St. 298; Attorney General v. Algonquin Club, 153 Mass. 447.)

ROBERT C. KINKEAD for appellee.

POINTS AND AUTHORITIES.

1. A party wall used as such, in the absence of proof to the contrary, will be presumed to have been erected under an agreement between the adjoining owners for their common use or under an express grant. (Lloyd on Building and Buildings, sec. 182; Schile v. Brockholmes, 80 N. Y. 614; Brown v. Werner, 40 Md. 15; Fleming v. Cohen, 71 N. E. Rep. 536; Bellenot v. Laube's Exors. 52 S. E. Rep. 698.)

2. One of the incidents of a party wall is the right of either party to heighten or lengthen it to meet the requirements of his building operations, if he can do so without injury to the other owner. (Putzell v. Drovers and Mech. Nat'l Bank, 78 Md. 349, 28 Atl. 276; Everett v. Edward, 5 L. R. A. 110; Matthews v. Dixie, 5 L. R. A. 102; Negus v. Becker, 143 N. Y. 307; Tate v. Fratt, 112 Cal. 613; Fidelity Lodge, &c., v. Bond, 147 Ind. 437; Brooks v. Curtis, 50 N. Y. 639; Carlton v. Blake, 152 Mass. 176; Jones on Easements, sec. 696-697; Lloyd on Building and Buildings, sec. 185-186; Washburn on Easements, 568.)

3. Before the rights of one owner of a party wall can be curtailed as to his use of the wall, the objecting party must allege and prove that the agreement or grant creates such limitation. (Everett v. Edwards, 5 L. R. A. 110; Matthews v. Dixie, 5 L. R. A. 102; Bellenot v. Laube's Exors. 52 S. E. Rep. 698; Fleming v. Cohen, 71 N. E. Rep. 536; Brown v. Werner, 40 Md. 15; Schile v. Brockholmes, 80 N. Y. 614.)

OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

The question for decision in this case is the right of one of the owners of a party wall to build upon it, so as to raise his house above the original height, without the consent of the other party. On the two lots owned, respectively, by Mrs. Bright and Miss Judge on Fourth street, in Louisville, were two houses, fronting upon the street. There was a wall between the houses which stood equally upon the two lots 6½ inches upon each. This wall supported each of the houses on that side, and was a party wall. The buildings were each three stories high. Miss Judge desired to build an additional story to her house, and to remodel it by building a practically new house. Negotiations for an agreement between the owners of the lots having failed, Miss Judge and her tenants tore down her old house, except they left the party wall intact, and built an additional 9-inch wall on her side against, and tied it to, the party wall till the top of the latter was reached, making a 22½-inch wall, and then extended the party wall the full thickness up another story. In doing the work no damage was done to Mrs. Bright's building. Nor was her use of it disturbed. Mrs. Bright sought an injunction restraining Miss Judge and Bacon & Sons, her tenants, from building the additional story so that any part of it would rest on her side of the party wall. The injunction was denied, and she has appealed.

The two houses were old buildings. There is no record of an agreement between the owners of the lots respecting the party wall. Nor is there any one who knows when the houses were built, or knows of

any express agreement between the owners when they were built. All that is known is that the party wall stands equally upon the two lots, and that it has been so used by the respective owners and their grantors for time out of mind. Nor was it shown whether the two houses were built by the same person owning both lots. There is thus presented the naked question as to the legal rights of such owners in the common or party wall between their homes. There is no statute in this State regulating the rights of owners of adjoining urban lots who build adjoining houses upon them. Whatever rights the parties have in such walls depend upon the common law. Of course if there had been an express agreement embodied in a grant, the matter would be one of construction only; for the parties could limit or extend their rights in whatsoever way they could agree upon. In this State, under the common law, the right to use and the manner of use of a party wall depends upon one of two propositions: Either an agreement between adjoining owners, or prescription. The adjudged cases throughout the country, which are very numerous, are not uniform in their declaration of the common law upon this subject. It would be useless, if not an endless task, to attempt to analyze and harmonize them. We apprehend that not a little of the confusion arises out of the constricted announcement of the controlling principle in the earlier cases, and the efforts of the later courts to keep within the strict rule stated as a principle, while working out differentiations in its application upon the varying facts of the cases, or resting the judgments upon certain fictions, in the absence of anything better for support. We think the cases are really divisible into two great bodies: One where the right

is purely prescriptive; the other where it is clearly
the subject. of agreement, express or implied.   If
two owners build a party wall for their common use,
it is not accurate to say ever that their rights in the
wall depend in any sense upon prescription.   It is.
then a matter of agreement solely—agreement ex-
,pressed or implied.   We can, lay to one side the sub-
ject of express agreement, as that is not here.   It
is not to be presumed that men build party walls, or
that either one of them would build one-half, or any
part, upon the adjoining lots, the walls designated
to be used, and actually used, by each adjoining
owner, without some kind of an understanding be-
tween them as to their respective. rights in the wall.
Without some understanding, if one alone so built
the wall, he would be a trespasser to the extent that
he encroached upon his neighbor's lot.   If he was
suffered to maintain his wall there for the period
which sets up the statutes of limitation, his use and
occupancy being hostile and exclusive, he would ac-
quire title to the part of the other lot occupied by
his wall, and the owner of such part would be barred
of all his former title and the rights he had under
it.   But that would not be a party wall.   It would
be an individual wall.   However, if the adjoining
owner immediately or directly attached his house to
the dividing wall, making it a part of his house, then
the statutes of limitation would stop running, if they
had begun, and the wall would become a party wall.
The last owner by his act in adopting it as a party
wall waived his right to sue in ejectment, and elected
to treat the use and occupancy of his neighbor as
amicable.   In the latter event he would be, because
he ought to be, estopped to deny that the wall there-
after stood as a party wall erected by agreement,

just as if the agreement had been entered into before
a brick was laid in it. One may adopt a .situation so
as to make himself a party to it as efficaciously as if
he had entered at the beginning. There is no state
of case that we can imagine where one owner builds
a wall astraddle of the dividing line between his and
his neighbor's lot, designed to be a party wall for
the buildings upon each lot, and which is accepted
and adopted by the other party thereafter, where the
doctrine of prescription can logically enter into the
case. The matter then becomes always a question
of agreement, express or implied. If express, its
terms control. If not express, then it must be im-
plied, like all other implied agreements that the
parties mutually understood and assented that a
fair equivalent was to be rendered by the one for
the benefits conferred upon him by the other. What,
then, is the implied agreement? It is, we think,
that the wall shall be and remain a party wall for
each of the lots; that its use shall be as a wall to
each of the buildings, constituting a part of each
building (Baugher v. Wilkins, 16 Md. 35, 77 Am.
Dec. 279, and to act as a support to each building
(Fleming v. Cohen, 186 Mass. 323, 71 N. E. 563, 104
Am. St. Rep. 572), and in the event either building
falls into disrepair, or it is deemed expedient by its
owners to remodel it (Heine v. Merrick, 41 La. Ann.
194, 5 South. 760, 6 South. 637) or reconstruct it
(Beidler v. King, 209 Ill. 302, 70 N. E. 763, 101 Am.
St. Rep. 246), he may do so, being careful not to
injure the other building (Fleming v. Cohen, supra;
Brooks v. Curtis, 50 N. Y. 689, 10 Am. Rep. 545), nor
unnecessarily interfere with its use (Clemens v.
Speed, 93 Ky. 284, 19 S. W. 660, 19 L. R. A. 240;
Speed, 93 Ky. 284, 14 Ky. L. R. 625, 19 S. W. 660, 19

L. R. A. 240; Negus v. Becker, 143 N. Y. 303, 38 N. E. 290, 25 L. R. A. 667, 42 Am. St. Rep. 724). That much seems to be well settled.

The question of compensation to the one building the wall need not be noticed here, except incidentally. . The apparent divergence in the authorities is as to the right of either, without the consent of the other, to add to the original use of the party wall. It must be remembered that we are dealing alone with what was the implied agreement originally. Now, as neither party to such an arrangement, after it was executed, could withdraw from it without the consent of the other (Henry v. Koch, 80 Ky. 391, 4 Ky. L. R. 282, 44 Am. Rep. 484), as to do so would be to annul an executed contract, he would be bound to let the other use the exact wall, if it was sufficient and safe for the pur= pose, to support the latter's building and constitute a wall to it. But it could not be presumed that the parties to the original convention ever contemplated yielding complete or qualified dominion over any part of their lots except as to the strip on which the party wall stood. It is not the manner of men to do so. The law will not presume a thing contrary to the custom of men. Then each party reserved, it must be presumed, the right to do with his lot, and the building on it, anything that would not impair the other's free use of the party wall as a party wall. Included in such reservation, or rather, included in the implied agreement of the parties, was the right of each to alter or reconstruct his building in any way he chose, so long as the other's use of the party wall was not impaired. If he had only a 1-story house on his lot to begin with, he could later build on it a 2-story house, or a 10-story house for that matter. He still owned his own lot, with all the rights of

proprietorship. And he owned it up to his line, which is the middle of the dividing wall in this case. Ingals v. Plamondon, 75 Ill. 118. His neighbor, however, had an easement in so much of the former lot as was occupied by the party wall. What is that easement? It is to have the party wall maintained, with all its uses as a party wall, and no more. And the easement of each in the wall on the other lot is precisely the same. When the owner of one determined to build a new house, or alter the old by adding a story or more to it, he did not abandon his easement in the other man's share in the wall, nor the title to his own. It cannot be assumed that such was the original conception of the parties. On the contrary, it must have been foreseen that in time, not only repairs must be made in each building, and alterations, too, perhaps, but that it would be desirable for the owner to enlarge his building by running it higher, or digging his cellar deeper. Putzell v. Drovers' Bank, 78 Md. 349, 28 Atl. 276, 22 L. R. A. 632, 44 Am. St. Rep. 298. As nothing was said between the parties, so far as known, restricting either owner as to such use of his property, it must be assumed that no such restriction was contemplated or included in their agreement. When one owner comes to enlarge his building, what then are his rights? As to all his property not covered by the party wall, it must be conceded it is unaffected by the agreement. And as he evidently did not intend to have a less title in that part of his lot occupied by the party wall, save only as the easement was granted to his neighbor, he could use it precisely as he might the remainder of the lot, provided that in doing so his neighbor's easement was not disturbed. So far there would probably be no dispute as to the effect

of their agreement. But when it comes to using the party wall for its whole width and depth for the purpose of the additional story, there is the rub. The other man objects to using any part of his side of the wall for the extension. We must again have recourse to what was probably in the minds of the contracting parties in the original agreement. If, as suggested, each reserved the right to build his house higher, and neither contemplated yielding dominion over any part of his lot except an easement in the party wall, then it must have been in their thought, and within the terms of their grant, that each should have the right to use the common wall for all the purposes to which it could be put as a party wall to divide and support the two adjoining buildings; and, when either chose to add to his building, he could carry up the party wall in its entire width, so as to make it a party wall for any building either might maintain on his lot. There is this limitation: Neither shall use any more of the other lot than is already set apart for the party wall—for that is the limitation set upon the use by the act of the parties at the time—and neither shall so use even that part as to unnecessarily interfere with the other's use, as it was begun.

In the case at bar appellees have built the additional story on their house, and have used the party wall in doing so. This we think was within the intendment of the parties who originally established the party wall, and dedicated each a part of his lot to its use. But, argue appellants, suppose we should want presently to build a 10-story house on our lot, then what is our situation as to the party wall? It must follow that appellants have that right, including the right to use the party wall for the purpose,

if it is strong enough to support the additional weight. Or they can add to it on their side, as appellees did in this case, till the top of appellees' building was reached, then go on, using the entire width of the wall, so long as they do not impair its stability as a wall for the other house. They would, when they came to use the wall of the additional story put on by appellees, be compelled to compensate appellees for one-half of its then value (Spalding v. Grundy, 104 S. W. 293, 13 L. R. A. [N. S.] 149, 31 Ky. Law Rep. 951), and if appellees or their vendees ever use the wall so built by appellants, then they would have to pay as outlined in the above-cited case. But, appellants urge, they may desire, and likely will, to build a steel structure, as is becoming the modern way of building very tall houses, and in that event the brick wall now there, as added to by appellees, would be entirely useless for their purpose; indeed would be in the way. We have no doubt appellants have the right to build a steel structure on their lot, and many stories higher than appellees' building. But suppose appellees had done nothing toward adding their additional story. The old party wall would have been in the way just the same, and have been as useless for appellants' purposes. Appellees would have been entitled to have it maintained for the use of their building.

But, while the law does not make contracts for parties, even when they are in a bad pickle, it attempts to put a reasonable and workable construction on such contracts as they may have made, because the law presumes that it is what they intended. The argument advanced by appellants, and the conjectural responses made by the court, as to the situation if changed, go to illustrate the imprac-

ticability of the rule of construction contended for by appellants. For if they could not agree further, both would be bound down to the maintenance of the old-fashioned houses, not rentable in competition with more modern buildings, leaving them helpless, or one of them in a situation which well could have been foreseen. That construction does injustice to their foresight and good sense, as well as sense of right, not to say enterprise. The other rule, the one which supposes that the parties intended their agreement to be not only continuing (as its nature clearly indicates), but a practical one, seems to us to be the better. It is that in the absence of the proof of an express agreement, the implication is that the parties have set aside for their common use as a party wall between the houses built on their adjoining lots, including repairs, remodeling, and renewals and extensions thereof, so much of their lots as is occupied by the existing party wall; that if in order to execute the plan of the remodeled building it is necessary for the party so intending to remove the party wall and put in one commensurate to the additional weight of the two buildings, he may do so at his own expense, doing no injury to the other building, and not unnecessarily interferring with its use by its occupant or owner. Putzell v. Drovers', etc., Bank, supra.

The other line of cases, that where the right is one created by prescription, need not be noticed here further than to indicate the difference between it and this case. Where one has built a wall on his own lot, but adjoining or near another lot, and the owner of the latter, without express agreement, joins his building to the wall, and maintains it for a period sufficient to constitute a bar under the statutes of limitation, then the latter has a right, established by

prescription, to maintain the exact house he has built, and, in the manner and to the extent of his use, he cannot be interferred with by the former. It is sometimes said this is because the law presumes the execution of a grant and its loss from the lapse of time. But this ancient fiction is not now needed to support the prescription under the modern statutes of limitation, which are not only statutes of repose, but operate so as to create right where none existed before. It is now the continued adverse use that creates the right of easement, not the fictitious lost grant. As it is the use that creates the right, the right must necessarily be measured by that use. It would be illogical to reason that one could obtain a right from a long-continued use different from that very use. Hence it is, in those cases where the right is one created by prescription, it is limited, from its very nature and origin, to the particular use which gave it being. So when an easement in another man's wall has been obtained by long use, which is to say, by prescription, it does not make the wall a party wall, except to the extent that the use of the encroacher has become a right; and, as nothing ought to be presumed in favor of a wrongdoer, it will not be presumed that because the owner suffered a trespasser to use the former's wall for say 15 years for a particular purpose, he thereby assented to its further use for all purposes. To this class of cases belong Welford v. Gerrard, 108 Ky. 322, 56 S. W. 416, and Mann v. Reigler, 111 S. W. 300, 33 Ky. Law Rep. 774, cited and relied upon by appellant.

In the case at bar, and others of its class, the right does not rest at all on prescription; for in this class so soon as the agreement is executed, either by writing or performance, it establishes the right of the

Bright v. Bacon & Sons, &c.

parties to the dividing wall as a party wall, with all the incidental rights that pertain to it. Time has no part in the shaping of the rights of these parties. Their rights were as ample the first day the wall was built as 40 years later. In the other class there is no right at all in one of the parties until the lapse of the period of the statutory bar. One grows out of contract; the other out of a long-continued tres- pass. To measure one, the term of the contract must be sought for; to measure the other, the exact use which created it may alone be looked to, as there is nothing else to which resort can be made to find the rights of the parties. In the first the contract may be implied. Under the situation we have in hand here, from the very necessity of the situation, there must have been some agreement. Houses do not grow by chance. The partition wall between them being partly on each lot, and each using the wall in common as a party wall, the inference of a pre-exist- ing agreement is irresistible. The arrangement could not have been accidental. Nor could it well have been trespass, as each by using the common wall with knowledge of the other's use assents to the situation —and there cannot be a permitted trespass. While it might be better if such agreements were in writing, and recorded as deeds are, still the agreement is not strictly in derogation of title, but on the whole is beneficial to the title (Harbor v. Evans, 101 Mo. 661, 14 S. W. 750, 10 L. R. A. 41, 20 Am. St. Rep. 646); and, when executed, it is not within the inhibition of the statutes of frauds and perjuries (Walker v. Shackelford, 49 Ark. 503, 5 S. W. 887, 4 Am. St. Rep. 61; Rindge v. Baker, 5q N. Y. 209, 15 Am. Rep. 475; Pireaux v. Simon, 79 Wis. 392, 48 N. W. 674). Whatever may have been the thought of the early

English judges as to the scope of this doctrine, it is much obscured by the paucity of precedents. The growth of large cities in modern times, and cities and towns in great number, where party walls are not only highly desirable as an economical matter to the parties, but well-nigh necessary, has shown the wisdom and necessity of the rule which we have stated, and which we believe is the trend of the authorities, and is, to say the least of it, the American common law on the subject.

The decree of the chancellor is therefore affirmed.