## Scoville et al. v. Burns.

January 16, 1948.

J. S. Forester, Judge.

316

G. E. Reams and Gus B. Bruner for appellants.

Astor Hogg and J. B. Carter for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Appellants, T. S. Scoville and C. N. Scoville, and appellee, Lloyd Burns, own adjoining lots in Harlan, Kentucky. On the Burns lot is a brick building erected in 1924 by John D. Hughes, then the owner of the lot. Burns acquired the lot and building from the Harlan National Bank on October 29, 1936. Appellants acquired the adjoining lot which was vacant from F. F. Cawood on October 25, 1945. In June, 1946, they commenced the erection of a building on their lot and bored holes in the south wall of appellee's building for the purpose of making it the north wall of their building on the theory that it was a party wall. Lloyd Burns brought this suit against the Scovilles on June 28, 1946, to enjoin them from trespassing on his property by tieing onto the south wall of his building. He alleged in his petition that he was the owner in fee simple and in possession of the building and lot which fronted on south Main Street in Harlan a distance of 26 or 27 feet, and he asked that his title be quieted. In an answer and counterclaim the Scovilles alleged that the deed to Burns called for a lot fronting 25 feet on Main Street and running back 90 feet, and that a former owner of the lot constructed the brick building thereon and in doing so extended and built the south wall over on the adjoining lot approximately 11 inches. They further alleged that at the time the former owner of the Burns lot constructed the brick building thereon it was agreed by him and the owner of the adjoining lot that the latter should own one-half of the south wall, and that by reason of

this agreement they had the right to build into and use the wall. They also alleged that there were two stairways used in connection with appellee's building, one of which led from the sidewalk on Main Street to the second story and the other led from the sidewalk to the basement, and that these structures were on appellants' property. They asked that Burns be required to remove these structures. A reply completed the issues. Proof was heard, and the circuit court granted the temporary injunction requested by the plaintiff and overruled the defendants' motion for an injunction restraining the plaintiff from maintaining and using the stairways. The defendants then entered a motion before a judge of this court to dissolve the temporary injunction granted by the circuit court, and to grant a temporary injunction requiring the plaintiff to remove the stairways. The motion was overruled. Additional proof was heard, and upon final submission of the case the circuit court adjudged that the appellee, Burns, is the owner of the brick building and lot on which it was situated and all appurtenances thereunto belonging, and permanently enjoined the appellants from using the south wall of appellee's building as a party wall. The court also refused to enjoin the appellee from maintaining the stairways on the south side of his building and dismissed the counterclaim.

The proof shows that appellee's lot was purchased by John D. Hughes from John Ball on May 5, 1924, and that immediately thereafter Hughes erected the brick building thereon. The deed to Hughes described the lot as 25 x 90 feet. The adjoining lot on the south was then owned by M. G. Hignite. Appellants introduced John D. Hughes as a witness, and he testified that after he constructed the building and the steps leading to the basement Hignite notified him that the building had been constructed partly on the Hignite lot. The date of this notice does not appear, but apparently it was subsequent to April 19, 1925, when M. G. Hignite conveyed his lot to his wife, Daisy Hignite, since Hughes testified that Hignite died shortly after the notice was given. Hughes also testified that he caused his brother, James D. Hughes, to purchase the Hignite lot for his, John D. Hughes' protection, but the record discloses that Daisy Hignite conveyed her lot to James D. Hughes after

John D. Hughes had sold and conveyed his lot to John W. Forester on May 4, 1927. John W. Forester conveyed the lot to G. J. Giles on May 28, 1927, Giles conveyed it to George R. Pope on October 23, 1930, and on October 27, 1936, it was conveyed by commissioner's deed to the Harlan National Bank which conveyed it to the appellee, Lloyd Burns, on October 29, 1936. The south wall of the building on the lot was not referred to in any of these deeds, but all of the deeds referred to and conveyed the building. James D. Hughes conveyed the adjoining lot to Lucy H. Pace on February 25, 1930, and the south wall of the building on appellee's lot was not mentioned in the deed. Subsequent deeds, including the deed from F. F. Cawood to appellants, dated October 25, 1945, attempted to convey a one-half interest in the south wall of appellee's building.

It is appellants' contention that the brick wall, the steps leading to the basement and the steps leading to the second story of appellee's building were erected on and over the adjoining lot now owned by appellants by permission, and the appellee therefore has not acquired title by adverse possession to the 11 inch strip of ground occupied by the wall or the right to maintain the steps. The uncontradicted proof is that John D. Hughes constructed the building and steps leading to the basement, and that the south wall of the building extended onto the adjoining lot 11 inches. The steps leading to the basement were entirely on the adjoining lot. The steps leading from the sidewalk to the second story were moved from the north side of the building to the south side in 1928 by G. J. Giles who then owned appellee's lot. These steps and the steps leading to the basement have been used continuously. John D. Hughes was unaware that he had constructed part of the south wall of his building and the steps leading to the basement on the adjoining lot until he received a notice to that effect from Hignite. The construction was without permission, and there is no evidence, as claimed by appellants, of a subsequent agreement between the owners of the two lots that the south wall of the Hughes building should be considered a party wall. The great weight of authority is to the effect that an open, notorious and exclusive possession of property for the statutory limitation period is sufficient for the acquisition of title by

adverse possession even though possession was taken under a mistake as to the boundary line. 2 C. J. S., Adverse Possession, sec. 84; Annotation in 49 A. L. R. 1016. Appellants cite and rely upon Bright v. J. Bacon & Sons, 131 Ky. 848, 116 S. W. 268, 20 L. R. A., N. S., 386, but there the wall stood equally upon the two adjoining lots, 6½ inches upon each, and had been used as a party wall by the owners of the two lots for a long period of time. It was held that it would be assumed that the wall had been constructed under an agreement that it should be a party wall, but in the course of the opinion the rule, in the absence of an agreement, express or implied, was stated as follows:

"It is not to be presumed that men build party walls, or that either one of them would build one-half, or any part, upon the adjoining lots, the walls designed to be used, and actually used, by each adjoining owner, without some kind of an understanding between them as to their respective rights in the wall. Without some understanding, if one alone so built the wall, he would be a trespasser to the extent that he encroached upon his neighbor's lot. If he was suffered to maintain his wall there for the period which sets up the statutes of limitation, his use and occupancy being hostile and exclusive, he would acquire title to the part of the other lot occupied by his wall, and the owner of such part would be barred of all his former title and the rights he had under it. But that would not be a party wall. It would be an individual wall."

We conclude that the judgment of the chancellor is correct, and it is affirmed.