## HUGH McLAUGHLIN vs. SARAH CECCONI.

Suffolk.    Jan. 25. — Feb. 26, 1886.    DEVENS & GARDNER, JJ., absent.

The owner of two adjoining lots of vacant land, numbered 3 and 4 on a certain
plan, mortgaged them by separate deeds to the same person.  The mortgage of
lot 3 conveyed the right to erect, maintain, and use for building purposes, a wall
on lot 4, to be built and maintained at the equal cost and expense of the owners
of lots 3 and 4.  The mortgage of lot 4 stated that the conveyance was subject to
the right of the owner of lot 3 to erect and maintain a wall on lot 4, to be built
and maintained for building purposes at the equal expense of the owners of the
two lots.  The mortgagor then conveyed lot 4 by a warranty deed, subject to
the mortgage upon it, and bounding it on a passageway included in lot 3, with a
right of way therein.  The grantee built a house upon lot 4, placing the wall
next to lot 3 entirely on his own land, and building it at his own expense.  He
also, subsequently to so building, paid off the mortgage.  After the conveyance
of lot 4, the mortgagor conveyed lot 3, describing it as subject to the mortgage
upon it.  The boundary on the street was stated to be a certain number of feet,
including a passageway three feet wide, and the line between the lot conveyed
and lot 4 was described as running through the centre of a brick partition wall.
The deed also contained a condition that the passageway was to be kept open,
not less than three feet wide and not less than five feet high in the clear, for the
benefit of lots 3 and 4.  The grantee of lot 3 then built a house, inserting the
timbers over the passageway into the wall on lot 4.  Thirty years afterwards
the owner of lot 3 proposed to build his house higher.  Held, on a bill in equity
by the owner of lot 4, that the owner of lot 3 had no right to place any further
burden on the wall than he had already acquired by adverse use.

DEVENS, J.    This bill in equity, filed July 29, 1885, is brought
to restrain the defendant from raising a wall between the houses
of the plaintiff and the defendant, and increasing the burden on it,
and from cutting away on the front wall of the plaintiff's house,
which covers the wall between said houses, for the purpose of
tying the proposed new front wall of the defendant into the side
wall.  The plaintiff's title is anterior to that of the defendant,
and both claim under a common grantor, Josiah Brown, who, on
March 5, 1842, conveyed to one Higgins, the plaintiff's grantor.
The conveyance was by a warranty deed, which contained an
agreement that the grantee should pay a certain mortgage to one
Chadwick.    It did not reserve, in favor of the land now owned
by the defendant, any rights over the plaintiff's land.    The
plaintiff's grantor then built a house and the wall in controversy.
It is found that this wall was built entirely on his own land by

the plaintiff's grantor, and this finding appears to us justified by the evidence. The boundary on the line of the two estates in the deed to Higgins was southeasterly of the passageway, which was for the use of both the estates of the plaintiff and the defendant, and the wall in controversy was entirely northwest of the way. The subsequent deed of Brown to Harris, (May 23, 1843,) the defendant's predecessor in title, does indeed run the side line of the lot conveyed to him through the centre of the wall;* but the evidence shows that there was no building on the lot at the time of this conveyance, and, as no rights were reserved by the common grantor in the plaintiff's land or building, none could be conveyed thereafter by him. If there were any doubt as to whether this wall was on the plaintiff's land, the facts that it was built more than thirty years ago, and has since been maintained by his predecessors and himself, would be sufficient to justify a finding that, by possession alone, he had a title to the land under the same.

Soon after the building of the plaintiff's house, that of the defendant was built, and the beams of the house were let into this wall, as well as the granite cap of the common passage over which the defendant's house extended,† which was also inserted in the plaintiff's front wall. The capstone was visible from the street, and, from the situation of the passageway, it was obvious that the defendant's house was more or less supported by the wall of the plaintiff. Upon these facts, it is not possible for the plaintiff to maintain his contention that an adverse use has not been established to the extent to which it has been found that the use existed.‡ Admitting that it is for the party claiming an

---

* This deed also described the boundary on Endicott Street as "nineteen feet eight inches, including the passageway three feet wide running southwesterly from said street." It also stated that the conveyance was upon the condition that the passageway shall be "forever kept open and unencumbered not less than three feet wide in the clear and not less than five feet high in the clear."

† This passageway appeared by the evidence to be three feet wide, and from five and a half to six and a half feet in height.

‡ Although the plaintiff in his brief took the point that, "excepting as to the granite cap of the passageway, the defendant's use of the wall in controversy was not apparent and was a secret use," yet it would seem that this point was not insisted upon; for, immediately following a slight discussion of

easement by user to show, not merely that such user existed, but that it was adverse, and not permissive only, and also that it was not secret, but open, these facts are sufficiently shown. It was fairly to be inferred that, when the defendant rested the timbers of her building in the plaintiff's wall, she did so in the assertion of a right, no evidence of a permission from the plaintiff to do so appearing; and, even if, by reason of the covering of the building, the plaintiff could not, without examination, determine the exact points where the timbers rested which supported the different stories of the defendant's house, when the location of the cap-stone of the passageway appeared, and when it was obvious that the whole building of the defendant was more or less supported by the plaintiff's wall, it cannot be said that such use was secret, and not known to nor apprehended by the plaintiff.

To the extent to which this use has been practised, the defendant may properly continue it as it has existed for thirty years. But she cannot enlarge or add to the rights acquired by adverse occupation except by some other title.

The defendant seeks to establish her right to a larger use than this, and to burden the wall by the supports required for a more weighty structure, which will, to an appreciable extent, weaken the wall by cutting therein for the purpose, and inserting and tying thereto additional timbers.

Before making the conveyances under which the plaintiff and the defendant respectively claim, their common grantor, Brown, who had purchased a large parcel of land from one Chadwick, had mortgaged both lots by separate deeds to him. The mortgage of lot 3, which is the lot held by the defendant, contained the following language: "Also the right to erect, maintain, and use for building purposes, a wall not more than one foot in thickness on the southeasterly side of lot No. 4 on said plan, and next to the land hereby conveyed, such wall to be built and maintained at the equal cost and expense of the owners of lots 3 and 4 on said plan."

---

this point, the following statement is made in the brief: "The plaintiff, however, only seeks by the bill to restrain the defendant from making any further use of the wall and increasing the burden thereon, and from tying in on the front wall of the plaintiff's house, which wall covers the wall in con-troversy on the front."

The mortgage of lot No. 4 contained this provision : "The above-granted lot is subject to the right of the owner of the lot No. 3 on said plan to erect and maintain a wall on the south-easterly side of said lot No. 4, said wall to be built and main tained for building purposes at the equal expense of the owners of the two lots." The payment of these mortgages was charged respectively on the two lots. The wall of the plaintiff having been built, the mortgage on lot No. 4 to Chadwick was paid and discharged by the plaintiff's grantor. The defendant's grantor built after the plaintiff's house and wall were built, and after the mortgage on lot No. 3 was paid, cancelled, and discharged. But although these mortgages are paid and discharged, and do not affect the record title, it was held at the trial by the presiding judge who reports the case, that " on the question of the extent of the rights which the defendant has acquired by adverse use, if the mortgages can be considered in connection with the rest of the evidence as bearing on the probable practical understanding with which the plaintiff's grantor built and the defendant and her predecessors in title used the wall, I find that, excepting as to the front wall of the plaintiff's building as now erected, the defendant and her predecessors in title have claimed, and by lapse of time have gained, rights to the extent contemplated in said mortgage deeds; provided that the use of the wall for the support of the beams of each story and for said granite cap (accompanied by a claim to the more extensive rights contemplated by said mortgage deed) could be sufficient to gain them."

The evidence does not, however, show that any claim was made by the defendant's grantor to the more extensive rights contemplated by the mortgage deed, or that such claim was ever made known to the plaintiff's grantor. Such claim cannot be inferred from the use of the wall as made, although that use might be sufficient to establish a right to the extent to which it actually existed. At the time the defendant's grantor thus commenced to use the wall, the mortgage on her land, by which the common grantor had established for the mortgagee a right in favor of lot 3 over lot 4, had been paid and discharged. The fact of the former existence of such a mortgage could not tend to show that the acts done were to be treated as an assertion of a right beyond the acts themselves, and to the more extensive privileges or

easements contemplated by the mortgage deed which had been cancelled. This view is much strengthened by observing that the wall actually built is not a wall built as the mortgages contemplated, and therefore that the recitals therein cannot properly affect rights in a wall constructed under circumstances different from those therein provided for. According to the mortgages, the mortgagee of lot 3 (the defendant's) was entitled to erect and maintain a wall on lot 4 (the plaintiff's) next to his own land, which was to be erected and maintained at the expense of the owners of the two lots. The mortgagee of lot 4 took subject to the right of the owner of lot 3 to erect and maintain such a wall for building purposes on lot 4 at the expense of the owners of the two lots. The wall actually built was not erected by the mortgagee or the owner of lot 3, but the owner of lot 4 constructed it entirely on his own land, solely at his own expense, and apparently solely for his own use. In such a wall, not built or maintained as the mortgage provides, the acts of the defendant cannot be treated as establishing rights coextensive with those contemplated by the mortgages.

We are therefore of opinion that the defendant should be restrained from doing any acts which will further weaken or burden the wall erected by the plaintiff.

In any aspect of the case, the defendant should be restrained from interfering with the front wall of the plaintiff's house, which, as now constructed, covers the side wall in controversy to the depth of one course of brick, as the plaintiff has thus maintained it for thirty years; but the view we have taken disposes of the claim of the defendant to interfere with this front wall, also upon the grounds we have heretofore stated.

<em>Decree accordingly.</em>

*O. A. Galvin*, for the plaintiff.

*I. R. Clark*, for the defendant, cited *Cubitt* v. *Porter*, 8 B. & C. 257; *Phillips* v. *Bordman*, 4 Allen, 147; *Campbell* v. *Mesier*, 4 Johns. Ch. 334; *Schile* v. *Brokhahus*, 80 N. Y. 614.