## Albert A. Wert et al., Appellees, v. John R. Thompson Company, Appellant.

### Gen. No. 28,486.

1. LANDLORD AND TENANT—*lessor as necessary party in suit to enjoin tenants from use of adjacent wall used in common by parties.* In a suit between the lessees under long terms of city lots, involving the rights in a wall used in common for the support of their respective buildings, the lessor of defendant is not a necessary party though he could properly have been made a party defendant.

2. PARTY WALLS—*presumption as to party wall status of wall built wholly on one side of boundary line.* It cannot be assumed that a wall used for the support of adjoining buildings was intended to be a party wall, in the sense of joint ownership or tenancy in common, when the wall was built entirely on the land of one party.

3. PARTY WALLS—*when rights in common wall acquired under contract determinable by user.* Where a wall entirely on land leased by complainants was used by defendant, the lessee of adjoining premises, as a partial support for his buildings and the right to use the wall had been acquired by a former owner of the adjoining premises by means of some lease or writing which was lost and its exact contents unknown, the nature and extent of the right of defendant in such wall will be determined by user and

as the only right defendant has in such wall is derived from such former owner, defendant will be entitled only to such use of the wall as is shown to have been made of it by such former owner.

4. PARTY WALLS—*what constitutes improper user.* In a suit involving the right of defendant to use a wall on complainants' premises in supporting new buildings, evidence that the new structures were supported in different places in complainants' wall from those used in the old buildings and that the dead weight imposed on complainants' wall, though somewhat decreased in the aggregate, was greater on some parts of the wall than had been imposed by the old buildings, showed a user of the wall materially different in extent and nature from the former user and constitutes a wrongful user for which a cause of action may be maintained.

5. PARTY WALLS—*remedy for improper user.* Where defendant, having a right to use a wall on complainants' premises erected new buildings which materially changed the user, complainants' only adequate remedy is in a court of equity.

6. PLEADING—*when amended bill does not state new cause of action.* Where a bill of complaint in a suit to enjoin an alleged unauthorized use by defendant of a wall of plaintiffs' building was on the theory that, if defendant had any right to use the wall, it was acquired by prescription and was abandoned when defendant tore down the old building and an amended bill was based on the theory that defendant's rights rested on a written agreement between their predecessors which was lost and its contents unknown, the relief prayed for is substantially the same in both bills and the amended bill does not state a new cause of action.

7. PARTY WALLS—*extent of right of user in common wall.* In a suit to enjoin the use by defendant of a wall on premises leased by complainants' and a strip of land between the outside of that wall and the true boundary line between the lots, where defendant's right to use the wall and strip was based on the right of a predecessor of defendant and it appears that between the building erected by defendant's predecessor and that occupied by complainants there was an open court along part of the wall, defendant had no right to use that part of the strip in erecting a new building.

8. PARTY WALLS—*loss of rights in common wall by cessation of user.* Where there was a strip of land between complainants' wall and the boundary line of the lot, which had been used by defendant as an incident to the use of complainants' wall to support one side of defendant's building and defendant's right to use the wall was based on user, by tearing down the old building and erecting a new one, involving a new and materially different use of the wall, the right to use such strip as well as the wall in such manner was lost and could be enjoined.

Appeal by defendant from the Circuit Court of Cook county; the

Hon. Hugo M. Friend, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1923. Affirmed. Opinion filed October 20, 1924. *Certiorari* denied by Supreme Court (making opinion final).

Mayer, Meyer, Austrian & Platt, for appellant.

Wilson, McIlvaine, Hale & Templeton, for appellees; William B. Hale and Pam & Hurd, of counsel.

Mr. Justice Johnston delivered the opinion of the court.

This is an appeal by the defendant, the John R. Thompson Company, from a decree of the circuit court of Cook county, in regard to a wall used in common in support of their buildings by the defendant and the complainants, Albert A. Wert, Joseph Trienens and William Henry Matthes. Both buildings are located in the City of Chicago on Monroe street, an east and west thoroughfare. The building of the complainants is east of and adjoining the defendant's building on the west. The complainants filed an original and an amended bill. In the amended bill, the complainants allege, in substance, that they are the owners of a leasehold estate of certain property on Monroe street in the City of Chicago for a term of 99 years and of the buildings situated on the property; that the buildings were erected in 1872; that the west wall of the buildings is entirely within the boundary line of their premises; that the west face of the wall at the north end is approximately 2¾ inches east of the west boundary line of the premises, and that the south end is approximately 4 inches west of the west boundary line; that the defendant is the owner of a leasehold estate to certain premises adjoining complainants' on the west; that in 1873 a five-story building was erected on the front of the premises of the defendant, and a two-story basement building, originally con-

structed as a barn, on the rear of the premises, by Albert Crane, the then owner; that the west wall of the complainants' building was used as the east wall for the Crane buildings; that Crane increased the height of the complainants' wall by one story for the use of the five-story building; that the right of Crane to use the wall of the complainants for his buildings "was acquired under a lease of the wall from the then owners of the complainants' property," the exact terms of the lease being unknown to the complainants; that Crane's five-story building extended from the south line of Monroe street to a depth of about 110 feet south of the south line of Monroe street, and that Crane's two-story basement building extended from a line about 140 feet south of the south line of Monroe street to a line 7 feet north of the north line of the alley in the rear of the premises; that there was an open court about 30 feet wide between the five-story building and the two-story basement building; that the part of complainants' wall which abutted on the open court was not used by Crane for the support of his buildings, but that in the year 1905 that part of the wall was used by certain lessees, successors of Crane, for the support of a one-story building which they constructed, and which connected the five-story building and the two-story basement building; that the use of that part of the wall was without any right, permission or authority from the complainants; that in the same year, 1905, the five-story building was partly remodeled, the two-story basement building was raised and remodeled, and the part of the complainants' wall above the roof line of the two-story basement building was used for the support of that building as remodeled; that an additional burden was placed upon all of that part of complainants' wall south of the five-story building without any right or authority; that during the months of March, April and May, 1920, the defendant tore down all of the

buildings on the premises leased by the defendant and removed all of the joists, beams and girders which had been used to support the five-story building, except certain joists which had been part of the third floor of the five-story building; that in March, 1920, the complainants were informed that the defendant intended to complete the tearing down of the buildings and to erect a new building, and to use the complainants' wall for support of the building; that complainants informed the defendant and its attorney that the defendant had no right to use the complainants' wall; that the defendant has cut large slots in the wall of the complainants and has inserted in the wall joists for the purpose of supporting the proposed new building; that the joists have been placed in complainants' wall in "places different from those occupied by any joists, beams, girders, or similar supports in any building formerly on the premises"; that the defendant is about to make use of the wall of complainants for its full length for the support of its new building and to put an additional burden on all of the wall south of the south line of the five-story building; that in March, 1920, the complainants served a written notice on the defendant in which it was stated that the wall of the complainants is entirely within the complainants' lot lines; that the wall is not a party wall; that the defendant had no right whatsoever in the wall; that any attempted use by the complainants will be considered a trespass and will be dealt with accordingly; that the division line between the complainants' premises and the defendant's is several inches to the west of the west face of the wall of the complainants; that the defendant is notified not to encroach upon the premises of the complainants; that any attempted use made by the defendant of that part of the complainants' premises located between the west face of the complainants' wall and the division line between the complainants' premises and the premises of the

defendant will be considered a trespass and will be dealt with accordingly.

The complainants further allege that the defendant, in erecting the new building, is encroaching upon that part of the premises belonging to the complainants located between the west line of the complainants' premises and the west face of the wall of the complainants; and that the defendant has no right to use this strip of land, or any part thereof, for its new building; that the defendant has now abandoned and waived its right to use the complainants' wall as lessee under the original lease to Albert Crane, and that the defendant does not now claim any rights under the lease; that the defendant has no right under said lease to the use of the wall, or any part of it, for the defendant's new building; that the defendant has no right whatever to the use of the wall, or any part of it, for its new building; that the action of the defendant in using the wall and in occupying the complainants' strip of land west of the wall, as aforesaid, is an invasion of the rights of the complainants in the wall and land, and unless restrained will cause the complainants irreparable damage.

The prayer of the bill is that the defendant, its agents, attorneys, contractors, employees, and all persons claiming by or through the defendant, may be perpetually enjoined from making any use of the wall of the complainants; that they may be perpetually enjoined from encroaching upon that part of the premises belonging to the complainants located between the west line of the complainants' premises and the west face of the wall of the complainants; that the defendant be ordered to remove all joists, beams, girders, and all other parts of its building from the wall of the complainants.

The answer of the defendant denies that the west face of the wall in question was within the boundary lines of the lot of complainants; disclaims any knowl-

edge concerning the lease of said wall, except that gained from a hearing of the testimony in the case; states that the building, the erection of which complainants sought to enjoin, was already up at the time the amended bill was filed; denies that the new building imposed an additional burden upon the wall; denies that defendant was encroaching upon the premises belonging to complainant; denies that it had no right to the use of said land alleged to be encroached upon; denies that it had ever abandoned or waived any right it now has or ever had to the use of the wall; denies that it had no right whatever to the use of the wall, or any part thereof, for its new building; denies that it had no right under the lease of the wall to the use of the wall, or any part thereof, for the new building; denies that it had no right to the use of the wall, or any part thereof, for the new building.

The evidence was substantially the same as the allegations of the bill of complaint.

The master found that all the material allegations of the bill of complaint were true, and recommended that the prayer of the bill should be granted. The defendant filed objections to the master's report. The court overruled the objections and entered a decree in conformance with the master's report.

Five grounds are urged by counsel for the defendant for a reversal of the decree.

The first contention of counsel for the defendant is that William O. Goodman, who is shown by the evidence to be the owner of the fee of the premises and the lessor of the defendant, is a necessary party; and that "the court was without jurisdiction to enter the decree in the absence" of Goodman. Counsel for the defendant argue this contention with confidence. They assert that it "seems so plain a proposition" that Goodman "will be materially affected by a decree against his lessee" that "argument in support there-

of is unnecessary''; that ''Goodman has a reversionary interest and anything which permanently affects the leased premises vitally affects him.'' They argue as follows: ''If the rights in the wall were permissive under a lease, who was lessor and who lessee; not complainants and John R. Thompson Co., but complainants and Goodman. If the rights partook of the nature of an easement, the question is between the dominant and servient estates, that is, between Goodman on the one hand and the complainants on the other, not complainants and John R. Thompson Co.'' Counsel for the defendant further maintain that ''the decree also has the effect of ousting Goodman from the narrow strip of land outside of the wall''; and that ''certainly that cannot be done without giving him a hearing.'' In discussing the subject of parties in proceedings in equity the Supreme Court of the United States defined the rule as follows:

''The general rule as to parties in chancery is, that all ought to be made parties who are interested in the controversy, in order that there may be an end of litigation. But there are qualifications of this rule arising out of public policy and the necessities of particular cases. The true distinction appears to be as follows: First. Where a person will be directly affected by a decree, he is an indispensable party, unless the parties are too numerous to be brought before the court, when the case is subject to a special rule. Second. Where a person is interested in the controversy, but will not be directly affected by a decree made in his absence, he is not an indispensable party, but he should be made a party if possible, and the court will not proceed to a decree without him if he can be reached. Third. Where he is not interested in the controversy between the immediate litigants, but has an interest in the subject-matter which may be conveniently settled in the suit, and thereby prevent further litigation, he may be a party or not, at the option of the complainant.'' *Williams v. Bankhead,* 19 Wall. (U. S.) 563, 571.

It has been stated that "an indispensable party is one who has such an interest in the subject-matter of a controversy that a final decree between the parties before the court cannot be made without injuriously affecting his interest or leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience." 20 R. C. L. p. 668.

It is true that in the case at bar on the theory of the bill of the complainants and on the facts, the right to the use of the wall inheres in the land, which Goodman owns in fee (14 Cyc. 1140, 1141), and consequently Goodman has a reversionary interest in that right. Logically it follows that the rights of Goodman will be affected by the decree. The complainants, however, are not the parties who are affecting his rights. The defendant, the lessee of Goodman, is the party who is affecting the rights of Goodman, if any of Goodman's rights are, as a matter of law, being infringed upon or violated. If the defendant is using the wall of the complainants in a way that will affect Goodman's reversionary interest adversely, Goodman has a remedy against the defendant. The complainants are demanding nothing of Goodman. The complainants have no cause of action against Goodman. It is not Goodman who is committing the alleged wrongful act, it is the defendant. Goodman is not in possession of the premises, but the defendant, Goodman's lessee, is in possession.

In our view the rule in regard to necessary parties does not require the complainants to make Goodman a party in order that the rights under the lease between Goodman and the defendant may be adjudicated. Goodman may be a proper party, but he is not a necessary party. It was optional with the complainants whether they would make Goodman a party or not. *Williams v. Bankhead, supra.*

We are strengthened in our conclusion by reason

of the fact that Goodman testified in the case at bar on behalf of the defendant. Goodman's testimony related to the issue as to how the right to the use of the wall in connection with the buildings on his property had been acquired. He testified that he did not recollect ever to have seen any contract or document in reference to the use of the wall, and that he had not paid any rent or compensation for the use of the wall. It is fair to presume, therefore, that Goodman had knowledge of the nature and object of the suit, and that he acquiesced in the conduct pursued by the defendant. Having knowledge of the issue in controversy, Goodman had an opportunity to intervene if the defendant's acts in regard to the wall exceeded or violated the terms of the lease between Goodman and the defendant. If Goodman did not see fit voluntarily to intervene and oppose the conduct of the defendant, reasonably it cannot be presumed that he would take a different attitude if he should be made a party to the suit by process of court. In the circumstances, to reverse the decree and remand the cause in order that Goodman may be made a party would be a most unreasonable procedure.

The next contention of counsel for the defendant is that the use that the defendant is making of the wall in connection with the new building is substantially the same as the use that was made of the wall in connection with the old buildings; in other words, that the defendant is not putting a new or additional burden on the wall. In determining this question, it is necessary to consider the origin, nature and extent of the right of the defendant to use the wall. It must be borne in mind that the wall is not a "party wall" within the meaning of a joint ownership or tenancy in common in the wall. The wall is on the premises of the complainants and is owned exclusively by the complainants. It cannot be assumed that the wall

was intended to be a party wall in the sense of joint ownership or tenancy in common in the wall when the wall was not built on the lands of both parties. *Brown & Hamilton Co. v. Johnson,* 251 Pa. 378, 381. The right, if any, of the defendant to the use of the wall is derived solely from the lease of Crane. The evidence shows that Crane paid $12.50 a month as rent under his lease for the use of the wall for "a long time," the exact length of time being unknown; but the evidence shows that the defendant never, at any time, paid any rent for the use of the wall. We have used the term "lease" as designating the instrument under which Crane's right was acquired, but as the document was lost and as its exact nature is unknown, it may not have been strictly speaking a lease.

. In the briefs of counsel for the defendant and counsel for the complainants the document is referred to as a lease, also as "some sort of a lease," and "some kind of a written arrangement." The master found that the rent paid by Crane was paid under a "written lease," the terms of which are unknown. In our opinion it is immaterial whether the document under which Crane acquired the right to the use of the wall was technically a lease. The important fact in this connection is that Crane's right was derived from a lost written agreement, the contents of which are unknown, and did not arise by virtue of any joint ownership or tenancy in common in the wall. The subsequent use of a different part of the wall in 1905 by the then lessees was without any lease, authority or permission of the complainants; and as that use had not continued for 20 years, it had not ripened into a prescriptive right when the complainants' bill was filed, namely 1920. *City of Chicago v. Sawyer,* 166 Ill. 290. The right, if any, of the defendant to the use of the wall is, therefore, limited to the right that Crane had to the use of the wall. Since the lease or instrument under which Crane derives his right to

use the wall is lost, the exact nature and extent of his right cannot be ascertained from the terms of the lease or instrument. In such a situation the rule is that usage determines the nature and extent of the right. "Where a way is claimed by prescription, the character and extent of it is fixed and determined by the user under which it is gained.  *  *  *  But if a way is created by express grant, user is not evidence to restrict the usual import of the terms of the grant. But if the grant is lost, usage alone indicates the extent of the way." Washburn on Easements and Servitudes (3rd Ed.), p. 117.

In the case of *Allegheny Nat. Bank v. Reighard,* 204 Pa. 391, 396, the right to use a joint stairway in common was involved. No contract of the parties, written or oral, in regard to the use of the stairway was given in evidence, but it was admitted that the complainant paid one-half of the cost of the construction of the stairway. The court said (p. 396):

"It is not material for the purposes of this case whether the appellant's right in plaintiff's building be called an irrevocable license or an easement, for it must rest on the principles and be decided on the footing of an easement by prescription. That the joint erection and occupation of the stairway and the area in which it is located were by agreement is known here just as it is implied in a prescription, but, in the absence of any evidence, either written or oral, as to the terms of the agreement, the court can only determine what it was by what was done without dispute by the parties on the land at the time and subsequently. That is the test of the nature and extent of an easement by prescription, and it must be the test here."

Following the rule announced in the authorities just cited, we are of the opinion that Crane's right to the use of the wall is fixed by the actual user that he made of the wall; and that since the defendant's right, if any, would be determined by Crane's right, the user

made of the wall by Crane is the only user to which the defendant could be entitled.

In connection with the erection of its new building, does the evidence show a user by the defendant materially different in extent and nature from the user by Crane? The evidence shows that the defendant has erected and completed a building two stories in height, which practically covers all of the premises of the defendant from Monroe street to the alley in the rear, and which also covers the strip of land owned by the complainants that lies between the west face of the wall of the complainants and the west boundary line of the land of the complainants; that the second story of the defendant's building runs to within 30 feet of the alley; that the height of the building is 35 feet from the sidewalk to the top of the coping; that the roof slopes back, starting 18 inches below the top of the coping, and is 29 feet above the sidewalk level at the end of the two-story part of the structure; that the roof of the rear or one-story part of the structure is between 16 and 17 feet above the sidewalk level; that the joists which support the first floor and the second floor and the roof were all inserted in the complainants' wall, and rest on that wall; that the rear wall of the two-story section of the building is supported on a steel beam that runs from west to east; that the complainants' wall was cut into about 6 inches and the steel beam inserted therein; that the complainants' wall is the east wall of the building and that the building has no east wall of its own; that the joists in the old building in the rear of the defendant's property were lowered about a foot, the brick work in the complainants' wall cut down about a foot, and the entire floor left in place, except that it was lowered about a foot; that the floor of the new building in the rear is the old floor dropped down about a foot; that the old openings for these floor joists in the complainants' wall were then bricked up; that some of the

joists in the old building were taken out and were used in the new building, but in each instance at a different point, as the floor levels of the old building were different from the floor levels of the new building; that the openings for the old joists in the complainants' wall left after the removal of these joists were all bricked up; that the dead weight on the complainants' wall caused by the old buildings on the defendant's property, before they were torn down in the spring of 1920, was 188,000 pounds; that 142,500 pounds of the 188,000 pounds was caused by the old five-story building, and 45,500 pounds by the old two-story basement building south of the old five-story building; that the dead weight on the complainants' wall caused by the new building on the defendant's property was 183,000 pounds, of which 84,000 pounds is caused by that part of the new building that is north of the south line of the old five-story building, and 99,000 pounds is caused by that part of the new building that is south of the south line of the old five-story building.

We are of the opinion that the evidence shows a user of the complainants' wall by the defendant materially different in extent and nature from the user by Crane. Such user by the defendant constitutes a wrongful act for which a cause of action may be maintained. Our conclusion is supported by authorities announcing the rule by which the nature and extent of a right of user of walls by prescription is ascertained. There is a close analogy between rights acquired in the use of walls under lost written agreements, the terms of which are unknown, and easements in walls acquired by prescription. The analogy between these rights appears more plainly when it is recalled that at common law the presumption was indulged that where the origin of the easement by prescription was unknown, the easement arose originally from a lost grant. 14 Cyc. pp. 1146, 1147.

In determining the character and extent of easements in walls acquired by prescription, it is the rule that the rights acquired under the easements are confined to the extent and character of the user of the walls, and, in the absence of agreement, cannot be enlarged upon or added to. *Bright v. J. Bacon & Sons*, 131 Ky. 848, 860; *Brown & Hamilton Co. v. Johnson*, 251 Pa. 378, 381; *McLaughlin v. Cecconi*, 141 Mass. 252, 254; *McDonnell v. Huffine*, 44 Mont. 411, 427; *Bright v. Morgan*, 218 Pa. 178, 183.

It has been held that the owner of an easement in a wall by prescription does not have the right to build the wall higher (*Bright v. Morgan, supra*); nor to use an extension of the wall (*Brown & Hamilton Co. v. Johnson, supra*); nor to weaken or burden the wall (*McLaughlin v. Cecconi, supra*); nor to use the wall in connection with a house except "to maintain the exact house." (*Bright v. J. Bacon & Sons, supra.*) It has also been held that where a stairway is used in common by adjoining owners, one of the parties could not make such changes in the stairway as to interfere with the light from windows opening into the rear, or cut new holes in the other party's wall to support new landings. (*Allegheny Nat. Bank v. Reighard, supra.*) In this case the court said (p. 397):

"That the changes inflict little or no damage on plaintiff is not material. Even a conceded benefit by an improvement cannot be imposed without consent, for plaintiff's right is to have the *status quo* maintained, independently of any actual present injury by the change. The legal injury which plaintiff is entitled to prevent is the permanent change in the conditions agreed upon as shown by the past user."

Counsel for the defendant contend "that when the use is permissive under a written lease, grant or contract, the terms of the instrument govern and that user does not fix the duration or term of the use; and that all presumptions are against complainants."

Numerous cases are cited by counsel for the defend-

ant to support their contention. In our opinion the authorities cited do not apply to the case at bar. They relate mainly to cases in which the right of recovery is based on a deed, contract or written instrument. But the suit of the complainants is not based on such a theory. The controversy does not relate to real estate, the title to which is claimed by the complainants by virtue of a lost deed or written instrument. The object of the suit is to restrain the defendant from using the wall of the complainants in a manner materially different from the use that the defendant was originally making of the wall. On the question whether the original use by the defendant was a use to which the defendant was lawfully entitled, we express no opinion, as that precise question is not an issue. Counsel for the complainants do not concede that the defendant has any rights under Crane's lease or agreement. In this respect counsel for the complainants say in their brief: "*  *  * we have insisted that the defendant's rights under the lease, if it has any, are limited by the principles which apply to cases of prescription."

The purpose of the complainants' suit is not to determine the validity of the original use of the defendant nor to fix the duration or term of the original use. The complainants concede that whatever rights, if any, the defendant originally had to use the wall were of the same nature and extent as the rights Crane had under his lease or agreement. The cause of action of the complainants is not based on Crane's lease or agreement. That lease or agreement is alleged and referred to by the complainants only for the purpose of measuring the extent and nature of the defendant's rights, if any, to the use of the wall. The complainants are not gaining "an advantage," as suggested by counsel for the defendant, "by their inability to prove the terms of the agreement with respect to the wall." They are conceding an advantage to the

defendant when they admit that the defendant's rights, if any, are the same as those acquired by Crane. The precise theory of the complainants' suit is that the defendant has abandoned whatever rights it may have had originally, if it ever had any, by making a new use of the wall and a use materially different from the user by Crane. It is this act of the defendant in putting the wall to a new and materially different use which the complainants allege to be wrongful and which they seek to remedy.

Counsel for the defendant further argue in this connection as follows: "What was the usage in this case which defines the character of the wall? At the very beginning defendant's predecessor added a story to the front part of the wall. Later complainants' predecessor added a story to the center section and our predecessor used that. The rear building on our lot was changed and the use of the wall changed. Extensive changes were made in 1905. All this was without any objection from anyone. Of what avail is it under these circumstances for complainants to cite cases to the effect that the owner of an easement may not build the wall up higher or use an extension of a wall or erect a new building? They are all prescriptive cases where usage indicated that such acts were not contemplated. Here in our case usage indicates the contrary. There was a varied use of the wall from the beginning and the use now made of it is merely another variation of the same character and nature of use which has been in vogue since the beginning."

In answer to the above argument it is sufficient to say that in our opinion the use that the defendant is now making of the wall is not "merely another variation of the same character and nature of use which has been in vogue since the beginning," but it is a new and materially different use.

Counsel for the defendant contend further that the

complainants have an adequate remedy at law; and that forcible detainer is an adequate remedy.

We think that it is obvious that an action of forcible detainer would not afford the complainants adequate relief. In our opinion the complainants could only obtain adequate relief in a court of equity. In analagous cases it has been so held. *Springer v. Darlington,* 207 Ill. 238; *Pradelt v. Lewis,* 297 Ill. 374.

In the case of *Springer v. Darlington, supra,* one of the parties to a party-wall agreement, in violation of the agreement, constructed a building with many windows in the wall, and the court held that the successor to the right of the other party to the agreement could, by injunction, compel the wall to be made into a solid wall in accordance with the agreement. The court said (p. 245):

"This wall, built where it is, in the manner it is built, necessarily depreciates the value of appellee's property. It is a private nuisance of a continuing character. No excuse whatever is offered for causing the caps and bases of the windows to project beyond the wall. A wall built on this foundation in accordance with the terms of the contract would add to the value of the property. Darlington is entitled to have the aid of equity to place the wall in the condition the contract required it should be. No other remedy is adequate."

The principles announced in *Pradelt v. Lewis, supra,* in which a mandatory injunction was granted to compel the removal of a building which encroached on the property of one of the parties, support the contention in the case at bar made by the complainants that they are entitled to equitable relief. In the case of *Pradelt v. Lewis, supra,* the court said (pp. 377-378):

"It is true, as argued by counsel for appellants, that the courts have held that where the encroachment is slight and the cost of removing it will be great and the corresponding benefit to the adjoining owner

small, or compensation and damages can be had, the court will ordinarily decline to compel a removal and will leave the complaining party to his remedy at law. (1 Corpus Juris, 1209.) This last rule is sometimes stated as applying only when the encroachment is slight and unintentional. In such cases the owner will ordinarily be left to his legal remedy, and the extraordinary remedy by injunction will be allowable only when strong reasons therefor are shown; but if the encroachment was intentional, the absence of present damage to the owner of the land encroached on will not defeat his right to an injunction. (1 R. C. L. 379.) * * * The record shows clearly that the appellees were in no way at fault in trying to protect their rights with reference to this encroachment, and this court has said with reference to the erection of buildings contrary to building restrictions in deeds, that 'the duty of the courts is to protect rights, and innocent complainants cannot be required to suffer the loss of their rights because of expense to the wrongdoer.' *Gulick v. Hamilton,* 287 Ill. 367.''

Counsel for the defendant maintains with much earnestness that ''assuming that the allegations of the original bill made out a case for the intervention of a court of equity, that case has been abandoned'' and a new cause of action has been stated by the amended bill; that as the defendant's building was completed at the time of the filing of the amended bill, ''the situation now is one where equity is asked not to enjoin a threatened act, but to enjoin an act already done, viz., the erection of a building.'' It is further contended by counsel for the defendant that as the original suit was abandoned by the filing of a new cause of action in the amended bill, the doctrine of *lis pendens,* in so far as the original bill is concerned, does not apply. The substance of the argument of counsel for the defendant is as follows: ''The original bill proceeded on the theory that the defendant from the time when it began to use complainants' wall was and always

continued and is now a trespasser; that as it started out with no right to use the wall, the lapse of time barred the complainants from asserting a remedy, and gave the defendant certain rights which were abandoned by the defendant. The amended bill proceeds on the theory that the defendant was a tenant under a lease, the exact terms of which are unknown to the complainants but which established the rights of the parties to the wall, and which were the same in 1920 as at the beginning, i. e., were no greater in 1920 than they were in 1873, on the first day that the wall was used; but defendant has abandoned and waived its rights under the lease and complainants are entitled to possession. The original bill proceeds on the theory of a tort. The amended bill proceeds on the theory that since the rights of the parties under a contract have terminated the complainants are entitled to possession. The original bill asked merely for an injunction; under the amended bill the complainants in reality seek to have a lease restored and construed." Counsel for the defendant argue further that "it cannot be said that the defendant had notice of complainants' position before work was begun on the new building."

We are of the opinion that the contentions of counsel for the defendant are without merit for the reason that in our view the amended bill does not state a new cause of action. The pertinent parts of the original bill are as follows:

"Complainants further state that there has been standing on said west half of the east half of Lot Two, above described, for a number of years—the exact number of which complainants are unable to ascertain —a five-story building; that said building had no wall of its own on the east side thereof, but has used for its east wall the west wall of complainants' buildings; that said use of complainants' wall was entirely without right; was under no grant, contract or agreement,

and whatever rights, if any, the owner of the building on said west half of the east half of Lot Two, above described, may have had were acquired by long continued use. * * *

"Complainants further state that whatever rights the said John R. Thompson Company, or its predecessors, may have had in or to the said west wall of complainants' building were confined to the use of the wall to support the building formerly on said west half of the east half of Lot Two, above described; that said John R. Thompson Company had no general right of support in said wall, and that by tearing down said building and removing the joists, beams, girders, etc., from the wall of complainants' building, it has abandoned and given up whatever rights in said wall it may have had. * * *

"Complainants further state that said John R. Thompson Company is encroaching upon that part of the premises belonging to complainants located between the west line of complainants' premises and the west face of said wall of complainants' buildings, and that whatever rights said John R. Thompson Company had in and to said strip of land were abandoned and given up by said John R. Thompson Company when it tore down the building on said west half of the east half of Lot Two, above described. * * *

"Complainants further pray that John R. Thompson Company, its agents, attorneys, contractors and employees, and all persons claiming by, through or under them, may be perpetually enjoined and restrained from making any use of said west wall of complainants' building; that they be ordered to remove all joists, beams, girders, etc., which they have placed in said wall, and that they be ordered to restore said wall to the condition it was in when said John R. Thompson Company commenced work upon its said new building; that they be perpetually enjoined and restrained from encroaching upon that part of the premises belonging to complainants located between the west line of complainants' premises and the west face of said wall of complainants'

building, and that complainants have such further and other relief as the circumstances of the case may require and to the court may seem meet; and complainants will ever pray.''

On a fair interpretation of the above allegations of complainants' original bill, it is doubtful whether the complainants proceed on the theory that the defendant was a trespasser *ab initio,* and is now a trespasser. The original bill does not so allege in terms. If such conclusions are permissible under the original bill, they follow by implication from the allegations that the use of the complainants' wall in connection with a building referred to as ''a five-story building'' was entirely without right; ''was under no grant, contract or agreement''; and that ''whatever rights'' the defendant may have had to the use of the wall were confined to the use which was made of the wall in support of the five-story building. At the time the original bill was filed, the complainants apparently did not know of Crane or his lease or agreement. After these facts had been shown by proof before the master, the original bill was amended so as to conform to the proof. In our opinion, however, it is immaterial whether the original bill is based on the theory that the defendant is a trespasser or not, since there is an allegation in the amended bill which, by implication, might also justify the inference that the defendant is now a trespasser. We are merely comparing the two bills to determine the contention of counsel for the defendant, that the bills state different causes of action. The allegation of the amended bill is that the defendant has no right to the use of the wall under Crane's lease or agreement; and ''has no right whatever to the use of said wall or any part thereof for its said new building.''

As we construe the original bill, it is based on the theory that ''whatever rights, if any,'' the defendant had, were acquired by prescription, and confined to

the use of the wall to support "a five-story building," which the evidence, taken subsequent to the filing of the original bill, showed was one of the buildings erected by Crane. The amended bill in our view does not proceed on the theory that the defendant was a tenant under a lease, as counsel for the defendant contend. We do not agree with the contention of counsel for the defendant that the original bill merely asks for an injunction; and that the amended bill in reality seeks to have a lease restored and construed. We are of the opinion that the relief prayed for is substantially the same in both bills.

It will be observed that both bills allege that the defendant has no right to the use of the wall. Under the original bill, as we have stated, it would appear that if the defendant has any rights, they were acquired by prescription. Under the amended bill, if the defendant has any rights, they were acquired by virtue of the lease of Crane, which is lost and the contents of which are unknown.

According to the authorities which we have previously cited, the extent and nature of the user of the wall by the defendant are determined in the same way, that is, by usage, whether the rights of the defendant were acquired by prescription or by a lease or agreement, which was lost and the contents of which are unknown. Washburn on Easements and Servitudes, *supra; Allegheny Nat. Bank v. Reighard, supra.*

It follows that the legal effect of the allegations of the original bill and the amended bill in respect of the rights, if any, of the defendant to the use of the wall are the same. The amended bill, therefore, does not state a new cause of action.

The last contention of counsel for the defendant is that the lower court erred in enjoining the defendant from encroaching on "the narrow strip of land out-

side of the wall in question.'' The complainants allege, and the evidence shows, that the wall of the complainants was built entirely on the land of the complainants, and that there was a strip of land between the west face of the wall and the west boundary line of the complainants' land; that the strip of land extended along the entire length of the wall, and was approximately 2¾ inches in width at the north end of the wall, and approximately 4 inches in width at the south end of the wall. The master found, and the evidence supports the finding, that there was an open court between the buildings which Crane erected, namely, the five-story building and the two-story basement building or barn; that the part of the wall which abutted on the court was about 30 feet in length and that this part of the wall had never been used by any one until 1905 when the then lessees of the property now occupied by the defendant used that part of the wall as the east wall of a one-story building erected by the then lessees. In connection with the use of that part of the wall, the then lessees used the part of the strip of land which extends along that part of the wall, and which was between the west face of the wall and the west border line of the complainants' land. This use of the part of the wall in question, and this use of the part of the strip of land as an incident thereto, has not ripened into a prescriptive right. As this part of the wall and this part of the strip of land were never used by Crane under his lease or agreement, or by anyone except as stated, and as the defendant's rights, if any, are determined by the user that Crane made of the wall, the defendant has no right whatever to use this part of the wall and this part of the strip of land, unless the right to use the wall may be implied from Crane's lease. We do not think, however, that such use may be implied. We have shown that the right that is acquired to use a wall under a lease that is lost, the contents of which

are unknown, is determined by usage, and when so established, such right, in the absence of agreement, cannot be enlarged or added to.

In the case of *Allegheny Nat. Bank v. Reighard, supra,* in which there was no agreement in evidence from which the rights of the parties to use a stairway in common could be determined, the court said (p. 396):

"The inference from the evidence is not that each party gave the other an unlimited right to use the common area for such purposes and in such manner as he might desire, or even for general use for a stairway, but that the right was definitely confined to the common area as it was established by the parties at the time and as it continued to be."

We are of the opinion that the defendant properly may be enjoined from using the part of the strip of land in question, namely, the strip of land which extends along the part of the wall which abuts on the court for 30 feet, and which strip of land is between the west face of the wall and the west boundary line of the complainants' land. Counsel for the defendant contend that "whatever that right is" to this strip of land, the right "belongs to Goodman, the owner of the fee"; and that "this emphasizes again the necessity of having the owner of the fee a party to the suit." The question who is the owner in fee of this strip of land is not involved in the case at bar. The precise inquiry is whether the defendant has the right to use this strip in connection with the building which the defendant has erected. We hold that the defendant has not the right. As the ownership of the fee to the strip is not decided by us, Goodman is not a necessary party.

In regard to the other strips of land between the west face of complainants' wall and the west boundary of complainants' land, namely, the strips of land upon which the buildings erected by Crane abutted,

we are of the opinion that Crane acquired the right to use those strips under his lease or agreement as a necessary incident to the use that he made of the complainants' wall. Crane could not use the wall in connection with his buildings without also using the strips of land in question. Whatever rights, if any, the defendant has to these strips of land were derived from Crane's lease or agreement. Since, however, we are of the opinion that the use of the wall by the defendant in connection with the building erected by the defendant is a new and materially different use to which the defendant is not entitled, and since the right to use the strips of land depends on the right to use the wall, it follows that the strips of land cannot be used. In our view, therefore, the decree may properly enjoin the defendant from encroaching on the strips of land in question.

For the reasons stated the decree of the circuit court is affirmed.

*Affirmed.*

McSURELY, P. J., and MATCHETT, J., concur.