EDWIN ANSIN & another, trustees, *vs.* HENRY L. TAYLOR, trustee.

HENRY L. TAYLOR, trustee, *vs.* EDWIN ANSIN & another, trustees.

Essex.    October 21, 1927. — January 6, 1928.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Devise and Legacy,* What property passes, Specific, Residue, By implication, Of easement. *Easement. Party Wall. Adverse Possession.*

It is a general rule of construction that the grant of a house carries with it title to all the land under the house, including the land on which the building stands and the land under the projecting eaves.

The owner of a tract of land on a street in a city previous to 1890 erected on its northerly portion a brick building, on its southerly portion a frame building and, later, between them a one-story laundry building with its floor timbers, supporting the entire building, attached to the frame building at the southerly ends and projecting about six inches into the wall of the brick building at their northerly ends; the north wall of the frame building was the south wall of the laundry; the north wall of the laundry was of siding on studs supported by the floor timbers. There were two openings in the southerly wall of the brick building communicating with the laundry building, and also windows in its second and third stories. The foundation of the brick building projected eighteen inches southerly from the face of the brick wall and the eaves overhung the southerly wall somewhat. The owner died in 1890 leaving a will specifically devising the brick building to a trustee; the other real estate passed under a residuary clause; the will defined no courses, measurements or monuments. At the hearing of petitions for the registration of the titles to the brick building and to the rest of the land in 1926, it appeared that the laundry building had been torn down. *Held,* that

(1) The title which passed to the trustee included the land under the eaves overhanging on the south side of the brick building, as well as the land under the stone foundation wall;

(2) The principle of law generally applicable to party walls had no

application in determining rights of the parties as to the southerly wall of the brick building;

(3) The residuary legatee and owner of the laundry building had an easement of support in the southerly wall of the brick building, which ended when the laundry building was torn down;

(4) A claim by the residuary legatee of title by adverse possession to the land upon which the brick wall rested was without merit since such possession could not be exclusive.

Two PETITIONS, filed in the Land Court on June 3 and June 18, 1926, respectively, each for the registration of the title to land adjoining that described in the other.

In the Land Court, the petitions were heard together by *Corbett*, J. Material evidence and facts found and decisions made by him are stated in the opinion. The petitioner in the first case, respondent in the second, filed a single bill of exceptions for both cases.

*M. F. Weston*, for Ansin and others.

*R. H. Taylor*, for H. L. Taylor.

CARROLL, J. This is a single bill of exceptions filed by Edwin Ansin and another, trustees, petitioners in the first case and respondents in the second case, hereinafter referred to as Ansin. The petitioner in the second case, the respondent in the first case, is hereinafter referred to as Taylor. The two cases were heard together in the Land Court and a single decision rendered.

The petitioners and respondents sought to register the title in fee simple to two adjoining parcels of land on the westerly side of Emerson Street, Haverhill. The controverted question is the line of division between the two properties. Prior to 1890, Levi Taylor, who was the owner of the above parcels, erected on the locus in the first case a frame structure known as the Elm House. On the locus in the second case he erected the brick structure called the trust building. At some time later he erected on the locus in the first case the so called laundry building, a one-story structure with a frontage of about ten feet on Emerson Street and a depth of about forty-three feet. In erecting it he attached the floor timbers at their southerly ends to the Elm House and the northerly ends he inserted into the southerly brick wall of the trust building. These floor timbers supported the entire struc-

ture. The north wall of the Elm House was used for one side of the laundry building. On the north side of the laundry building studs were placed against the brick wall of the trust building, supported by the floor timbers. On these studs side boards were nailed. There were two openings in the wall on the trust building "with doors, one from the cellar and one from the street floor of the laundry building." There was also a chimney flue in the wall of the trust building. "These openings and flue would indicate that the laundry and the store in the trust buildings at some time were used together perhaps by tenants or lessees of both." The stone foundation wall of the trust building, for a distance of twenty-seven feet westerly from Emerson Street, projected southerly a maximum of eighteen inches from the face of its brick wall; the eaves overhung the sidewalk and extended for a short distance on the south side.

Taylor's contention is that his southerly line is a line that runs along the base of the above mentioned stone foundation, and sixteen inches from the face of the brick wall, extended to the rear of his lot. Ansin contends that the northerly boundary of his lot is a line beginning at the corner of the pilaster of the trust building and running westerly by the line of the projecting bricks at the southwest corner of the trust building. On account of the projection of the pilaster at the front and the bricks in the rear of the building, this line for the most part is three and three fourths inches southerly from the face of the brick wall. The strip of land in dispute is about twelve and one fourth inches wide.

When the petition in the first case was filed, the hotel and laundry building were standing, as shown on the plan filed with the petition. Since then these buildings have been removed and a block of one-story stores constructed on the locus in that case. The projecting foundation stone wall of the trust building was made a part of the foundation for the north wall of the stores.

Levi Taylor died January 1, 1890. By the thirteenth article of his will he provided that the income from the trust building was to go to his wife and sons for life with a remainder over. Taylor as trustee derives his title under this

devise.  Ansin acquired his title by mesne conveyances from the residuary legatees.  In the devise of the trust building no courses, measurements or monuments are given and this is so as to the devise of the residue.

The judge of the Land Court ruled that the devise of the trust building included all the land under the eaves which overhang on the south side, as well as all the land under the stone foundation wall extending twenty-seven feet from Emerson Street; that under the devise of the rest and residue. the remaining land on the south was included.

It is a general rule of construction that the grant of a house carries with it title to all the land under the house, including the land on which the building stands and the land under the projecting eaves.  *Forbush* v. *Lombard,* 13 Met. 109. *Webster* v. *Potter,* 105 Mass. 414.  *Sherman* v. *Williams,* 113 Mass. 481.  The stone foundation upon which the brick building rested was a part of the building.  See *Bacon* v. *Bowdoin,* 22 Pick. 401, 406; *Millett* v. *Fowle,* 8 Cush. 150; *Rogers* v. *Snow,* 118 Mass. 118, 124.  The Land Court, therefore, was right in ruling that Taylor's title included the land under the eaves overhanging on the south side, as well as the land under the stone foundation wall.

The floor timbers of the laundry building were inserted in the brick wall of the trust building and "rested for about six inches upon the brick."  These timbers supported the entire building; on the studs which were placed against the wall supported by the floor timbers, boards were nailed. It is contended in the brief of Ansin that "by a fair construction of the will the predecessors . . . of Ansin took the fee in at least so much of the brick wall as supported the floor timbers" to the height and depth occupied by the laundry building and to the ground underneath.

We do not accept this construction.  The devise of the brick building was a specific devise.  It was a gift of the entire building without exception.  There was nothing in the language of the will to indicate that the fee in the wall for six inches was excepted from the devise.  The photograph shows that there were windows in the south wall of the trust building at the second and third stories.  It was not intended,

in our opinion, that by the gift of the residue the residuary
devisees should have the fee in six inches of the brick wall
throughout its entire extent. Nor was it intended that the
portion of the wall for the height and extent of the laundry
building should belong to any one other than the devisees
of the brick building. There was nothing to imply that the
particular portion of the wall for six inches should be owned
in fee by the residuary devisees, and that the remaining
portion on the second and third floors should be held by the
devisees mentioned in this specific devise. Such a construc-
tion would be contrary to the intention of the testator, as
shown by the language of the will and the surrounding cir-
cumstances. A gift of the residue of an estate, in the absence
of language to the contrary, means the estate which remains
after satisfying all previous gifts. *Quinn* v. *McDowell*, 47
R. I. 314, 316. This is also true of the land under the eaves
of the trust building and the land under its stone foundation.
Ansin had an easement of support for the laundry building,
because its floor beams were inserted under the brick walls
of the trust building and were carried by it; but he did not
own the fee in this portion of the wall and he had no fee to
the land under the eaves or under the foundation of the brick
building, extending for a distance of twenty-seven feet from
the street. The eaves of the trust building projected over the
laundry building, while the laundry building was above
the stone foundation; its floor beams, as we construe the
record, were not supported by this foundation, but were
carried by the brick wall. If there were any intention by
the testator to except from his devise of the brick building
the land under the eaves and under the stone foundation,
there is no such intention manifested or to be inferred from
any of the facts, or from the terms of the grant.

The judge of the Land Court was right in his ruling that
the principles of law generally applicable to party walls had
no application. Assuming that such a wall may mean a wall
belonging entirely to one of the adjoining owners, subject
to the rights in the other to have it maintained as a dividing
wall between the two tenements; *Watson* v. *Gray*, 14 Ch. D.
192, 195; and assuming that Ansin had an easement therein,

he did not have the fee in any portion of the land covered by the brick building.

The wall was entirely on the land of the testator. The extent to which it was used for the support of the floor timbers of the laundry building is shown by the statements in the judge's decision that "studs were placed against the brick wall of the trust building and supported by the floor timbers"; and "the north wall of the Elm House was used for one side of the laundry building." See *McLaughlin* v. *Cecconi*, 141 Mass. 252; *Everett* v. *Edwards*, 149 Mass. 588.

*Fleming* v. *Cohen*, 186 Mass. 323, relied on by Ansin, is to be distinguished. In the case at bar the brick wall was not a party wall; it belonged to the testator, and on his death Ansin's predecessors in title took title to no part of it.

While no easement existed during the unity of ownership, an easement did exist on the death of the common owner and Ansin had an easement in the wall for support of the laundry building. See *Carbrey* v. *Willis*, 7 Allen, 364, 369. This right continued during the existence of the laundry building. *McKenna* v. *Eaton*, 182 Mass. 346. *Cotting* v. *Boston*, 201 Mass. 97. As that building had been removed by the owners the easement in the wall no longer existed. *Union National Bank of Lowell* v. *Nesmith*, 238 Mass. 247.

The bill of exceptions recites that since the death of Levi Taylor in 1890, until the laundry building was torn down in 1926, Ansin and his predecessors in title continuously and openly occupied and possessed it, including the land and cellar beneath it, claiming to own the same. It further appears that the projecting stone foundation was not visible from the street, and the front wall of the laundry building, which was of wood, came up flush with the brick wall. Ansin contends that the fee of the land in question belongs to him by adverse possession. The judge found that Ansin acquired no title to the land by adverse possession. The testimony of the witnesses is not contained in the bill of exceptions. We see no error of law in this finding. To acquire title by adverse possession one must have exclusive possession. *Bellis* v. *Bellis*, 122 Mass. 414, 417. As long as the foundation of the trust building was on the disputed

strip of land the owner of the laundry building did not have possession of the disputed strip. There was no evidence to show that Ansin claimed to be the owner of the land in fee as distinguished from the possessor of an easement in the wall during the life of the laundry building. To give him title in fee it must have appeared from evidence inconsistent with the possession of an easement that he was claiming the title in fee. From all that is shown, his possession was equally consistent with the right of an easement. See *Sprow* v. *Boston & Albany Railroad*, 163 Mass. 330, and cases cited. As there was no adverse possession, the granting of the eighth request was not prejudicial to Ansin. No error is shown in this record.

In each case the entry is to be

*Exceptions overruled.*